[No. B185996. Second Dist., Div. Seven. Jan. 10, 2007.]

COURTNEY KNAPP, a Minor, etc., et al., Plaintiffs and Appellants, v. PALISADES CHARTER HIGH SCHOOL et al., Defendants and Respondents.

## COUNSEL

Edwin Carney for Plaintiffs and Appellants.

Foley & Lardner and Gregory V. Moser for California Charter Schools Association and California Charter Schools Association Joint Powers Authority as Amici Curiae on behalf of Plaintiffs and Appellants.

Soltman, Levitt & Flaherty, John S. Levitt and Philip J. Bonoli for Defendants and Respondents.

## OPINION

**ZELON, J.**—In this sexual harassment action, a visiting student appeals the trial court's grant of summary judgment in favor of an incorporated charter high school, its teacher and the chartering school district on the ground that she failed to comply with and was not excused from meeting the claim presentation requirements of the Government Tort Claims Act (Gov. Code,[1] § 900 et seq.) (the TCA). Following *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164 [48 Cal.Rptr.3d 108, 141 P.3d 225] (*Wells*), we conclude that, as an alleged nonprofit public benefit corporation, the charter school is not a "public entity" under the TCA. It is further not required to file identifying information on the Roster of Public Agencies under section 53051. Thus, claims against the incorporated charter need not satisfy the TCA. Accordingly, we reverse and remand with instructions.

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *FACTS*

The following facts are undisputed. Plaintiff and appellant Courtney Knapp lives with her parents in Pacific Palisades. Defendant and respondent Palisades Charter High School (PCHS), a California corporation[2] whose charter was granted by defendant and respondent Los Angeles Unified School District (LAUSD), is the public high school that serves the area. In February 2004, then 13-year-old Knapp was in the eighth grade at Calvary Christian School (Calvary), a private school. Knapp's parents planned to send her to PCHS for high school upon graduation from Calvary.

On February 6, 2004, PCHS sponsored a "Shadow Day," which provided prospective students the opportunity to attend two classes with a PCHS student. Knapp shadowed PCHS student Kaylie McAllister, her friend and neighbor. They attended an advanced placement European history class taught by defendant and respondent Ronald Cummings, who allegedly made and/or allowed other students to make sexual statements or innuendos toward Knapp.

Specifically, upon learning that Knapp attended Calvary, Cummings made the sign of the cross and said, "May God bless you." He then asked Knapp to make his tea. During class, Cummings allegedly slapped, hugged and kissed two male students. In the middle of his lecture, Cummings brought up the topic of Janet Jackson exposing her breast on the 2004 Super Bowl half-time show, whereupon a student commented that Knapp probably did not know the meaning of the word "boob." A student was surprised to learn that Knapp was in the eighth grade, exclaiming that she was "huge." The remark drew laughter from the class in light of the Janet Jackson discussion. When the embarrassed student explained that he meant Knapp was tall, Cummings looked at Knapp's breasts and commented that she had a "nice pair of knockers." Later, the word "boob" was again injected into the class discussion. Another student remarked, "Maybe we should show the 8th grader what they look like." For the rest of the class period, Cummings interspersed his lecture with profanity and discussed the "shuttlecock" loom, which he called the "cock."

---

[2] In the record, the declaration of Jack Sutton, PCHS Executive Director, set forth that "PCHS was incorporated in the State of California on February 4, 2004" and was a "separate legal entity" from Los Angeles Unified School District, but provided no information on the type of corporation formed. No articles of incorporation or bylaws were included in the record on appeal. When questioned by this court during oral argument, defendants' counsel was unable to identify the type of corporation formed by PCHS. Plaintiff, however, has made no objection to the characterization of PCHS as a corporate entity.

The experience in Cummings's class made Courtney Knapp feel embarrassed, humiliated, exposed, and afraid that Cummings and his students would single her out again for sexual banter. Fearful of running into Cummings again and of being teased by students from the class, she stopped attending athletic events to support her friends at PCHS. Knapp ultimately decided against going to PCHS for high school. Instead, she elected to enroll at the private Oaks Christian High School in Westlake Village, a 50-minute one-way bus ride from Pacific Palisades.

## II. PROCEDURE

### A. The Demand

On the night of Shadow Day, Knapp's father, Thomas Knapp, M.D., directed an e-mail to PCHS's then Principal and Executive Director Linda Hosford about Cummings's conduct with his daughter, and demanded a call within one business day and a meeting within two business days. However, the e-mail he sent to Hosford was apparently directed to the wrong address. Knapp then forwarded Hosford a written account of the events. McAllister and her mother also complained orally and in writing to Hosford and the PCHS Board of Directors about Cummings. Hosford declined to meet with the Knapps until she completed an investigation of the incident. Hosford enlisted the help of Assistant Principal Ann Davenport with the investigation,[3] and advised her that the school was "being sued."

On February 9, 2004, Knapp retained counsel and demanded that PCHS either terminate Cummings or pay for four years of Courtney Knapp's private education. In a letter dated February 17 by its counsel, PCHS declined to negotiate with Knapp on her demands and gave the following notice: "Should you wish to file a claim for such alleged damages with the School, you will need to first file a claim which meets the requirements of the Government Tort Claims Act under California law."

### B. The Claim for Damages

On March 3, 2004, Knapp filed a claim for damages with the County of Los Angeles. The claim demanded that LAUSD pay $125,000 for four years

---

[3] On May 5, 2004, Hosford completed her investigation and placed a written warning/reprimand in Cummings's personnel file. The next day, Hosford informed the Knapps in writing that PCHS had completed its investigation, that while any personnel action taken was confidential, the school policy prohibited inappropriate conduct by employees and retaliation against whistleblowers. On January 28, 2005, the California Commission on Teacher Credentialing informed the Knapps that it had reviewed their affidavit and had recommended a public reproval of Cummings.

of private high school education for her. The enumerated claims included: violation of the Unruh Civil Rights Act (Civ. Code, §§ 51, 51.5 & 52, subd. (a)); violation of title IX of the 1972 Education Amendments (20 U.S.C. § 1681); violation of title 42 United States Code section 1983; emotional distress; and negligent failure to train, supervise and discipline Cummings.

On March 12, the County of Los Angeles rejected Knapp's claim on the ground that it did not involve the county, its officers, agents or employees. The letter additionally stated: "STATE LAW REQUIRES THAT YOU BE GIVEN THE FOLLOWING 'WARNING': [¶] Subject to certain exceptions, you have only [six] (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim. See Government Code section 945.6. [¶] This time limitation applies only to causes of action for which Government Code Sections 900–915.4 required you to present a claim. Other causes of action, including those arising under federal law, may have different time limitations. [¶] You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so immediately."

Knapp never filed a claim for damages with PCHS or LAUSD. On January 11, 2005, the Los Angeles County Registrar-Recorder/County Clerk issued a certificate of fact of non-filing, which verified that the Roster of Public Agencies had no record of a filing by PCHS during the relevant period.

C. *The Lawsuit and Summary Judgment*

On June 11, 2004, Knapp, by and through her father as guardian ad litem (collectively Knapp), sued PCHS, LAUSD and Cummings (collectively defendants) for sexual harassment under the Unruh Civil Rights Act (Civ. Code, § 51.9), and intentional and negligent infliction of emotional distress.

Defendants moved for summary judgment or, in the alternative, summary adjudication on the grounds that Knapp failed to properly present claims under the TCA and sustained no damages. Following argument, the court granted the motion on the ground that Knapp failed to raise a triable issue of material fact as to whether she properly filed a claim in accordance with section 945.4. The court explained that "[n]o claim was ever filed with the LAUSD, but rather with the County of Los Angeles, the wrong entity." It held that Thomas Knapp's correspondence with Hosford did not substantially fulfill the requirements of the TCA, because Knapp "never clearly indicated that legal action was a certainty." Further, because "PCHS is not a school district for purposes of the Government Claims [Act]," it was "not required to

register its information on the Roster of Public Agencies," and Knapp "was not excused in serving the proper public entity."[4]

## DISCUSSION

### I. *STANDARD OF REVIEW*

The Supreme Court established the standard of review for an order granting summary judgment. "A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.] In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . .' [Citations.]" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477 [110 Cal.Rptr.2d 370, 28 P.3d 116]; see also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 854–855 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Katz v. Chevron Corp.* (1994) 22 Cal.App.4th 1352, 1363–1364 [27 Cal.Rptr.2d 681].)

### II. *THE CHARTER SCHOOLS ACT*

The Charter Schools Act of 1992 (Ed. Code, § 47600 et seq.) (CSA) provides for the establishment and operation of charter schools that operate independently of existing school districts, county boards of education or the State Board of Education. (§§ 47605, 47605.5, 47605.6 & 47605.8.) In enacting the CSA, the Legislature intended to allow "teachers, parents, pupils, and community members to establish . . . schools that operate independently from the existing school district structure." (Ed. Code, § 47601.)

The charter establishing a charter school is a contract detailing the school's educational programs, goals, students served, measurable pupil outcomes and measurement methods, and the school's governance structure. (Ed. Code, § 47605, subd. (b)(5).) Charters are granted for a specific term, typically not in excess of five years. At the end of the term, the entity

---

[4] This appeal relates solely to the claims against PCHS and Cummings; the parties do not address, and we do not reach, issues pertaining to any other party. Reversal of the judgment is only as to PCHS and Cummings.

granting the charter may renew the school's contract. (Ed. Code, § 47607.) "[C]harter school officials are officers of public schools to the same extent as members of other boards of education of public school districts. So long as they administer charter schools according to the law and their charters, as they are presumed to do, they stand on the same constitutional footing as noncharter school board members. If they violate the law, the charter will be revoked." (*Wilson v. State Bd. of Education* (1999) 75 Cal.App.4th 1125, 1141 [89 Cal.Rptr.2d 745].)

■ A charter school is eligible for its share of state and local public education funds. (Ed. Code, § 47630 et seq.) It must comply with the CSA, specified statutes, and the terms of its charter, but is otherwise exempt from the laws governing school districts. (Ed. Code, § 47610.)

■ Legislation afforded charter schools varying degrees of autonomy. Initially, charter schools were viewed as operationally but not legally separate from their chartering authorities. (See 80 Ops.Cal.Atty.Gen. 52, 55–56 (1997); 81 Ops.Cal.Atty.Gen. 140, 144 (1998).) Effective 1999, Education Code section 47604 provided that charter schools may also elect to operate as, or be operated by, a nonprofit public benefit corporation, formed and organized pursuant to the nonprofit public benefit corporation law.[5] (Ed. Code, § 47604, subd. (a), added by Stats. 1998, ch. 34, § 3.) In 2000, the Legislature added the provision that a charter school, including one operated by a nonprofit public benefit corporation, may be considered a "public agency," as defined in section 6500, for the purpose of being eligible for membership in a joint powers agreement for risk-pooling. (§ 6528.) Irrespective of their form, "the requisite constitutional control over charter schools . . . are in place whether a school elects to 'operate as, or be operated by, a nonprofit public benefit corporation' . . . , or whether it remains strictly under the legal umbrella of the chartering authority." (*Wilson v. State Bd. of Education, supra,* 75 Cal.App.4th at p. 1140.)

---

[5] Public benefit corporations are formed for a public or charitable purpose. They are not operated for the mutual benefit of their members but for some broader good. Articles of incorporation containing specified information must be filed in order to form a public benefit corporation. (Corp. Code, §§ 5120–5122.) "For all purposes other than an action in the nature of quo warranto, a copy of the articles of a corporation duly certified by the Secretary of State is conclusive evidence of the formation of the corporation and prima facie evidence of its corporate existence." (Corp. Code, § 5133.) In addition, the bylaws "shall set forth (unless such provision is contained in the articles, in which case it may only be changed by an amendment of the articles) the number of directors of the corporation" and "may contain any provision, not in conflict with law or the articles, for the management of the activities and for the conduct of the affairs of the corporation . . . ." (Corp. Code, § 5151, subds. (a), (c).)

### III. *UNDER* WELLS, *CLAIMS AGAINST AN INCORPORATED CHARTER SCHOOL NEED NOT SATISFY THE TCA*

Our threshold question is whether PCHS is a "public entity" subject to the TCA.[6] During the pendency of this appeal, the Supreme Court decided *Wells*, providing significant guidance on this issue.

In *Wells*, a Texas corporation, through a California public benefit corporation, operated a distance learning program in several California charter schools chartered by different school districts. (*Wells, supra,* 39 Cal.4th at p. 1180.) A group of students and their parents or guardians sued the charter schools, their corporate operators, and the chartering school districts, alleging that the schools failed to deliver promised instructional services, equipment, and supplies. (*Ibid.*) Their claims included violation of the California False Claims Act (§ 12650 et seq.) (CFCA) and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL). (39 Cal.4th at pp. 1178–1179.) There, as here, the plaintiffs did not comply with the claim presentation requirement of the TCA. (39 Cal.4th at p. 1213.) The Supreme Court addressed whether and in what circumstances the charter schools and/or their operators could be exposed to civil liability based on these allegations. (*Id.* at p. 1178.) It also considered whether the CFCA cause of action against the charter school defendants required prior presentment of a claim under the TCA. (39 Cal.4th at p. 1213.)

Focusing on the corporate structure of these charter schools, the court reasoned that the charter schools in question were "*operated,* not by the public school system, but by distinct outside entities—which the parties characterize as nonprofit corporations—that are given substantial freedom to achieve academic results free of interference by the public educational bureaucracy. The sole relationship between the charter school operators and the chartering districts is through the charters governing the schools' operation." (*Wells, supra,* 39 Cal.4th at p. 1201.) The court further observed that these charter school operators exercise considerable autonomy and independent responsibility as to financial matters, such that the chartering authority is not liable for their debts and obligations. (*Ibid.*; see Ed. Code, § 47604, subd. (c).) It noted that the CSA's 2003 amendment extended immunity to chartering authorities for " 'claims arising from the performance of acts,

---

[6] Subject to certain exceptions not implicated here, the TCA provides that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ." (§ 945.4.) "Submission of a claim to a public entity pursuant to [the Act] is a condition precedent to a [civil] action and the failure to present the claim bars the action. [Citation.]" (*Paramount Unified School Dist. v. Teachers Assn. of Paramount* (1994) 26 Cal.App.4th 1371, 1387 [32 Cal.Rptr.2d 311].)

errors, or omissions by the . . . school, if the authority has complied with all oversight responsibilities required by law.' (Ed. Code, § 47604, subd. (c)[.])" (*Wells, supra,* at p. 1201.) "Though, by statutory mandate, these institutions are an alternative form of public schools financed by public education funds, they and their operators are largely free and independent of management and oversight by the public education bureaucracy." (*Id.* at p. 1203.) The court determined the charter schools did not qualify as "public entities" under the CFCA. (39 Cal.4th at p. 1203.) Because they competed with the traditional schools for students and funding, neither did the court find them to be "governmental entities" exempt from the UCL's restrictions on their competitive practices. (39 Cal.4th at p. 1204.)

Further, even though charter schools are deemed to be school districts under the CSA, the court in *Wells* found "those purposes do not expressly include coverage by the TCA . . . ." (*Wells, supra,* 39 Cal.4th at p. 1214.) In connection with the CFCA, the court noted that the charter school defendants did not "fit comfortably within any of the categories defined, for purposes of the TCA, as 'local public entities.' " (39 Cal.4th at p. 1214.) And, even if the charter school defendants were viewed as " 'local public entities' for purposes of the TCA, plaintiffs were not required under that statute to present written claims before filing their qui tam complaint pursuant to the CFCA." (*Id.* at p. 1216.)

Here, PCHS was granted its initial charter on June 30, 2000, by LAUSD. According to the record and counsel's statement at oral argument, the charter has been subsequently amended and renewed. On February 4, 2004, two days before the alleged incident occurred, PCHS allegedly incorporated as a California corporation. Like the charter schools in *Wells,* PCHS is deemed a separate school district under Education Code section 47612, subdivision (c), and an independent legal entity from its chartering authority. It has its own board of directors and budget, hires its own administrators and teachers, and has identified its own authorized agent for service of process. It is likewise given substantial freedom to achieve academic results free of interference by the LAUSD, whose chartering authority comprises the sole relationship with PCHS. The charter provides that PCHS must carry its own insurance and bond. PCHS must further indemnify and hold the LAUSD harmless from claims arising from the charter school, its acts or omissions and those of its officers or employees. PCHS must also engage its own independent public accountant and be responsible for its own financial services. In addition, it must reimburse LAUSD for any services rendered upon request.

■ Accordingly, assuming PCHS can demonstrate that it is a nonprofit corporation independent from the LAUSD, we follow *Wells* and conclude that Knapp was not required to present written claims to the charter school under the TCA before filing her sexual harassment and tort claims.

## IV. *PCHS IS NOT REQUIRED TO FILE ITS IDENTIFYING INFORMATION ON THE ROSTER OF PUBLIC AGENCIES*

 For purposes of the Roster of Public Agencies, "public agency" "means a district, public authority, public agency, and any other political subdivision or public corporation in the state, but does not include the state or a county, city and county, or city." (§ 53050.) Consistent with our holding above, if it is a nonprofit public benefit corporation, we find that PCHS is not a "public agency" within the meaning of section 53050 separately required to register with the Secretary of State and the county clerk for the Roster of Public Agencies.

### DISPOSITION

The judgment is reversed and remanded without prejudice to renewal of the motion for summary judgment should any party demonstrate that PCHS is not a nonprofit public benefit corporation. Knapp shall recover her costs on appeal.

Perluss, P. J., and Woods, J., concurred.

A petition for a rehearing was denied January 30, 2007, and on January 30, 2007, and February 5, 2007, the opinion was modified to read as reported above. Respondents' petition for review by the Supreme Court was denied March 28, 2007, S150364.