128 T.C. No. 14

UNITED STATES TAX COURT

CALIFORNIANS HELPING TO ALLEVIATE MEDICAL PROBLEMS, INC.,
Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 20795-05.                    Filed May 15, 2007.

P provided counseling and other caregiving services (collectively, caregiving services) to its members, who were individuals with debilitating diseases. P also provided its members with medical marijuana pursuant to the California Compassionate Use Act of 1996, codified at Cal. Health & Safety Code sec. 11362.5 (West Supp. 2007). P charged its members a membership fee that generally reimbursed P for its costs of the caregiving services and its costs of the medical marijuana. R determined that all of P's expenses were nondeductible under sec. 280E, I.R.C., because, R determined, the expenses were incurred in connection with the trafficking of a controlled substance.

<u>Held</u>: Sec. 280E, I.R.C., precludes P from deducting its expenses attributable to its provision of medical marijuana.

<u>Held</u>, <u>further</u>, P's provision of its caregiving services and its provision of medical marijuana were separate trades or businesses for purposes of sec. 280E, I.R.C.; thus, sec. 280E, I.R.C., does not

preclude P from deducting the expenses attributable to the caregiving services.

Matthew Kumin, Henry G. Wykowski, and Willian G. Panzer, for petitioner.

Margaret A. Martin, for respondent.

LARO, Judge:  Respondent determined a $355,056 deficiency in petitioner's 2002 Federal income tax and a $71,011 accuracy-related penalty under section 6662(a).[1]  Following concessions by respondent, including a concession that petitioner is not liable for the determined accuracy-related penalty, we decide whether section 280E precludes petitioner from deducting the ordinary and necessary expenses attributable to its provision of medical marijuana pursuant to the California Compassionate Use Act of 1996, codified at Cal. Health & Safety Code sec. 11362.5 (West

---

[1] Unless otherwise indicated, section, subchapter, and chapter references are to the applicable versions of the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

Supp. 2007).[2]  We hold that those deductions are precluded.  We also decide whether section 280E precludes petitioner from deducting the ordinary and necessary expenses attributable to its provision of counseling and other caregiving services (collectively, caregiving services).  We hold that those deductions are not precluded.

FINDINGS OF FACT

Certain facts were stipulated and are so found.  The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.  When the petition was filed, petitioner was an inactive California corporation whose mailing address was in San Francisco, California.

Petitioner was organized on December 24, 1996, pursuant to the California Nonprofit Public Benefit Corporation Law, Cal.

---

[2] At a general election held on Nov. 5, 1996, the California electors approved an initiative statute designated on the ballot as Proposition 215 and entitled "Medical Use of Marijuana".  See People v. Mower, 49 P.3d 1067, 1070 (Cal. 2002).  The statute, the California Compassionate Use Act of 1996, codified at Cal. Health & Safety Code sec. 11362.5 (West Supp. 2007), was intended

> To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of * * * any * * * illness for which marijuana provides relief.

Id. sec. 11362.5(b)(1)(A); see also People v. Mower, supra at 1070.  We use the term "medical marijuana" to refer to marijuana provided pursuant to the statute.

Corp. Code secs. 5110-6910. (West 1990).[3] Its articles of incorporation stated that it "is organized and operated exclusively for charitable, educational and scientific purposes" and "The property of this corporation is irrevocably dedicated to charitable purposes". Petitioner did not have Federal tax-exempt status, and it operated as an approximately break-even (i.e., the amount of its income approximated the amount of its expenses) community center for members with debilitating diseases. Approximately 47 percent of petitioner's members suffered from Acquired Immune Deficiency Syndrome (AIDS); the remainder suffered from cancer, multiple sclerosis, and other serious illnesses. Before joining petitioner, petitioner's executive director had 13 years of experience in health services as a coordinator of a statewide program that trained outreach workers in AIDS prevention work.

Petitioner operated with a dual purpose. Its primary purpose was to provide caregiving services to its members. Its secondary purpose was to provide its members with medical marijuana pursuant to the California Compassionate Use Act of 1996 and to instruct those individuals on how to use medical marijuana to benefit their health. Petitioner required that each

---

[3] Under California law, public benefit corporations are organized for a public or charitable purpose; they are not operated for the mutual benefit of their members but for a broader good. See Knapp v. Palisades Charter High School, 53 Cal. Rptr. 3d 182, 186 n.5 (Ct. App. 2007).

member have a doctor's letter recommending marijuana as part of his or her therapy and an unexpired photo identification card from the California Department of Public Health verifying the authenticity of the doctor's letter. Petitioner required that its members not resell or redistribute the medical marijuana received from petitioner, and petitioner considered any violation of this requirement to be grounds to expel the violator from membership in petitioner's organization.

Each of petitioner's members paid petitioner a membership fee in consideration for the right to receive caregiving services and medical marijuana from petitioner. Petitioner's caregiving services were extensive. First, petitioner's staff held various weekly or biweekly support group sessions that could be attended only by petitioner's members. The "wellness group" discussed healing techniques and occasionally hosted a guest speaker; the HIV/AIDS group addressed issues of practical and emotional support; the women's group focused on women-specific issues in medical struggles; the "Phoenix" group helped elderly patients with lifelong addiction problems; the "Force" group focused on spiritual and emotional development. Second, petitioner provided its low-income members with daily lunches consisting of salads, fruit, water, soda, and hot food. Petitioner also made available to its members hygiene supplies such as toothbrushes, toothpaste, feminine hygiene products, combs, and bottles of bleach. Third,

petitioner allowed its members to consult one-on-one with a counselor about benefits, health, housing, safety, and legal issues. Petitioner also provided its members with biweekly massage services. Fourth, petitioner coordinated for its members weekend social events including a Friday night movie or guest speaker and a Saturday night social with live music and a hot meal. Petitioner also coordinated for its members monthly field trips to locations such as beaches, museums, or parks. Fifth, petitioner instructed its members on yoga and on topics such as how to participate in social services at petitioner's facilities and how to follow member guidelines. Sixth, petitioner provided its members with online computer access and delivered to them informational services through its Web site. Seventh, petitioner encouraged its members to participate in political activities.

Petitioner furnished its services at its main facility in San Francisco, California, and at an office in a community church in San Francisco. The main facility was approximately 1,350 square feet and was the site of the daily lunches, distribution of hygiene supplies, benefits counseling, Friday and Saturday night social events and dinners, and computer access. This location also was the site where petitioner's members received their distribution of medical marijuana; the medical marijuana was dispensed at a counter of the main room of the facility, taking up approximately 10 percent of the main facility. The

peer group meetings and yoga classes were usually held at the church, where petitioner rented space. Pursuant to the rules of the church, petitioner's members were prohibited from bringing any marijuana into the church. Petitioner also maintained a storage unit at a third location in San Francisco. Petitioner used the storage unit to store confidential medical records; no medical marijuana was distributed or used there.

Petitioner paid for the services it provided to its members by charging a membership fee that covered, and in the judgment of petitioner's management approximated, both the cost of petitioner's caregiving services and the cost of the medical marijuana that petitioner supplied to its members. Petitioner notified its members that the membership fee covered both of these costs, and petitioner charged its members no additional fee. Members received from petitioner a set amount of medical marijuana; they were not entitled to unlimited supplies.

On May 6, 2002, petitioner's board of directors decided that petitioner would henceforth discontinue all of its activities. Petitioner thus ceased conducting any activity and filed a "Final Return" (Form 1120, U.S. Corporation Income Tax Return) for 2002. This return reported the following items on the basis of an accrual method of accounting:

| | | | |
|---|---|---:|---:|
| Gross receipts or sales | | | $1,056,833 |
| Less returns and allowances | | | 8,802 |
| Balance | | | 1,048,031 |
| Cost of goods sold: | | | |
| Inventory at beginning | | | |
| of year | | $12,551 | |
| Purchases | | 575,317 | |
| Cost of labor | | 203,661 | |
| Other costs: | | | |
| Cash (over/under) | $1,680 | | |
| Operating supplies | 29,077 | | |
| Program costs | 13,026 | | |
| Total other costs | 43,783 | 43,783 | |
| Inventory at end of year | | | |
| of year | | -0- | |
| Total cost of goods sold | | 835,312 | 835,312 |
| Gross profit | | | 212,719 |
| Deductions: | | | |
| Compensation of officers | | 14,914 | |
| Salaries and wages | | 44,799 | |
| Repairs and maintenance | | 1,456 | |
| Rents | | 25,161 | |
| Taxes and licenses | | 28,201 | |
| Depreciation | | 8,409 | |
| Advertising | | 200 | |
| Employee benefit programs | | 24,453 | |
| Other deductions: | | | |
| Accounting | 5,086 | | |
| Auto and truck | 308 | | |
| Bank charges | 1,097 | | |
| Computer expense | 961 | | |
| Dues and subscriptions | 20 | | |
| Employee development | | | |
| training | 1,940 | | |
| Insurance | 7,727 | | |
| Internet service | | | |
| provider | 2,238 | | |
| Janitorial | 1,409 | | |
| Laundry and | | | |
| cleaning | 105 | | |
| Legal and | | | |
| professional | 5,500 | | |
| Meals and | | | |
| entertainment | 402 | | |
| Miscellaneous | 269 | | |
| Office expense | 4,533 | | |
| Outside services | 4,421 | | |
| Parking and toll | 120 | | |
| Security | 2,185 | | |
| Supplies | 660 | | |
| Telephone | 7,870 | | |
| Utilities | 18,514 | | |
| Total other deductions | 65,365 | 65,365 | |
| Total deductions | | 212,958 | 212,958 |
| Taxable loss | | | 239 |

In a notice of deficiency mailed to petitioner on August 4, 2005, respondent disallowed all of petitioner's deductions and costs of goods sold, determining that those items were

"Expenditures in Connection with the Illegal Sale of Drugs" within the meaning of section 280E. Respondent has since conceded this determination except to the extent that it relates to the "Total deductions" of $212,958.[4] Respondent has also conceded that the expenses underlying the $212,958 of total deductions are substantiated.

The "Total deductions" were ordinary, necessary, and reasonable expenses petitioner incurred in running its operations during the subject year. The specific expenses underlying those deductions are as follows:

! The $14,914 deducted for compensation of officers reflects the salary of petitioner's executive director. The executive director worked 50 hours a week for 17 weeks. The executive director directed petitioner's overall operations and was not directly engaged in petitioner's provision of medical marijuana.

! The $44,799 deducted for salaries and wages reflects the compensation of petitioner's 24 other employees. Seven of the 24 employees were

---

[4] In other words, respondent concedes that the disallowance of sec. 280E does not apply to costs of goods sold, a concession that is consistent with the caselaw on that subject and the legislative history underlying sec. 280E. See Peyton v. Commissioner, T.C. Memo. 2003-146; Franklin v. Commissioner, T.C. Memo. 1993-184; Vasta v. Commissioner, T.C. Memo. 1989-531; see also S. Rept. 97-494 (Vol. 1), at 309 (1982).

involved in petitioner's provision of medical marijuana. The other 17 employees were involved with petitioner's provision of caregiving services.

**!**     The $1,456 deducted for repairs and maintenance reflects expenses petitioner incurred to repair and maintain its main facility.

**!**     The $25,161 deducted for rents reflects $15,000 of rent for the main facility, $5,700 of rent for the use of the church, and $4,461 of rent for the storage unit and a photocopier.

**!**     The $28,201 deducted for payroll taxes reflects petitioner's liability for the payment of payroll taxes.

**!**     The $8,409 deducted for depreciation reflects depreciation of petitioner's property.

**!**     The $200 deducted for advertising reflects the cost of advertising by petitioner, including a $150 expense for the rental of a booth where petitioner distributed literature.

**!**     The $24,453 deducted for employee benefit programs reflects the cost of a health insurance policy that petitioner maintained for its employees.

**!** The $5,086 deducted for accounting reflects the fees of petitioner's accountant.

**!** The $308 deducted for auto and truck reflects repairs made to a van used to transport members.

**!** The $1,097 deducted for bank charges reflects bank service charges petitioner incurred.

**!** The $961 deducted for computer expense reflects the cost of purchasing and maintaining computers petitioner used in its operations.

**!** The $20 deducted for dues and subscriptions reflects dues petitioner paid to an association comprising persons performing functions similar to those of petitioner.

**!** The $1,940 deducted for employee development training reflects costs petitioner incurred to train its bookkeeper and management team.

**!** The $7,727 deducted for insurance reflects the cost of petitioner's liability insurance.

**!** The $2,238 deducted for Internet service provider reflects the cost of petitioner's Internet services.

**!** The $1,409 deducted for janitorial reflects the cost of petitioner's garbage services.

! The $105 deducted for laundry and cleaning reflects costs petitioner incurred to clean and launder napkins used in its food distribution.

! The $5,500 deducted for legal and professional reflects the fees of petitioner's attorney. None of these fees involved any defense for criminal prosecution.

! The $402 deducted for meals and entertainment reflects costs that petitioner incurred for meals furnished to its employees who worked late or long hours.

! The $269 deducted for miscellaneous reflects miscellaneous expenses petitioner incurred.

! The $4,533 deducted for office expenses reflects costs petitioner incurred for office supplies such as paper and printer toner.

! The $4,421 deducted for outside services reflects the cost of petitioner's payroll service company.

! The $120 deducted for parking and toll reflects petitioner's reimbursement to its employees who paid parking fees and tolls on behalf of petitioner.

! The $2,185 deducted for security reflects the cost of security at the main facility, including the costs of an alarm company and medical service.

! The $660 deducted for supplies reflects the costs petitioner incurred to buy various supplies.

! The $7,870 deducted for telephone reflects the cost petitioner incurred for its telephone service.

! The $18,514 deducted for utilities reflects the cost of the gas and electricity petitioner used at its main facility.

## OPINION

The parties agree that during the subject year petitioner had at least one trade or business for purposes of section 280E. According to respondent, petitioner had a single trade or business of trafficking in medical marijuana. Petitioner argues that it engaged in two trades or businesses. Petitioner asserts that its primary trade or business was the provision of caregiving services. Petitioner asserts that its secondary trade or business was the supplying of medical marijuana to its members. As to its trades or businesses, petitioner argues, the deductions for those trades or businesses are not precluded by section 280E in that the trades or businesses did not involve "trafficking" in a controlled substance. Respondent argues that

section 280E precludes petitioner from benefiting from any of its deductions.

Accrual method taxpayers such as petitioner may generally deduct the ordinary and necessary expenses incurred in carrying on a trade or business. See sec. 162(a). Items specified in section 162(a) are allowed as deductions, subject to exceptions listed in section 261. See sec. 161. Section 261 provides that "no deduction shall in any case be allowed in respect of the items specified in this part." The phrase "this part" refers to part IX of subchapter B of chapter 1, entitled "Items Not Deductible". "Expenditures in Connection With the Illegal Sale of Drugs" is an item specified in part IX. Section 280E provides:

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

In the context of section 280E, marijuana is a schedule I controlled substance. See, e.g., Sundel v. Commissioner, T.C. Memo. 1998-78, affd. without published opinion 201 F.3d 428 (1st Cir. 1999). Such is so even when the marijuana is medical marijuana recommended by a physician as appropriate to benefit

the health of the user.  See <u>United States v. Oakland Cannabis Buyers' Coop.</u>, 532 U.S. 483 (2001).

Respondent argues that petitioner, because it trafficked in a controlled substance, is not permitted by section 280E to deduct any of its expenses.  We disagree.  Our analysis begins with the text of the statute, which we must apply in accordance with its ordinary, everyday usage.  See <u>Conn. Natl. Bank v. Germain</u>, 503 U.S. 249, 253-254 (1992).  We interpret that text with reference to its legislative history primarily to learn the purpose of the statute.  See <u>Commissioner v. Soliman</u>, 506 U.S. 168, 174 (1993); <u>United States v. Am. Trucking Associations, Inc.</u>, 310 U.S. 534, 543-544 (1940); <u>Venture Funding, Ltd. v. Commissioner</u>, 110 T.C. 236, 241-242 (1998), affd. without published opinion 198 F.3d 248 (6th Cir. 1999); <u>Trans City Life Ins. Co. v. Commissioner</u>, 106 T.C. 274, 299 (1996).

Congress enacted section 280E as a direct reaction to the outcome of a case in which this Court allowed a taxpayer to deduct expenses incurred in an illegal drug trade.  See S. Rept. 97-494 (Vol. 1), at 309 (1982).  In that case, <u>Edmondson v. Commissioner</u>, T.C. Memo. 1981-623, the Court found that the taxpayer was self-employed in a trade or business of selling amphetamines, cocaine, and marijuana.  The Court allowed the taxpayer to deduct his business expenses because they "were made in connection with * * * [the taxpayer's] trade or business and

were both ordinary and necessary." Id. In discussing the case in the context of the then-current law, the Senate Finance Committee stated in its report:

> Ordinary and necessary trade or business expenses are generally deductible in computing taxable income. A recent U.S. Tax Court case allowed deductions for telephone, auto, and rental expense incurred in the illegal drug trade. In that case, the Internal Revenue Service challenged the amount of the taxpayer's deduction for cost of goods (illegal drugs) sold, but did not challenge the principle that such amounts were deductible.
>
> On public policy grounds, the Code makes certain otherwise ordinary and necessary expenses incurred in a trade or business nondeductible in computing taxable income. These nondeductible expenses include fines, illegal bribes and kickbacks, and certain other illegal payments. [S. Rept. 97-494 (Vol. 1), supra at 309.]

The report then expressed the following reasons the committee intended to change the law:

> There is a sharply defined public policy against drug dealing. To allow drug dealers the benefit of business expense deductions at the same time that the U.S. and its citizens are losing billions of dollars per year to such persons is not compelled by the fact that such deductions are allowed to other, legal, enterprises. Such deductions must be disallowed on public policy grounds. [Id.]

The report explained that the enactment of section 280E has the following effect:

> All deductions and credits for amounts paid or incurred in the illegal trafficking in drugs listed in the Controlled Substances Act are disallowed. To preclude possible challenges on constitutional grounds, the adjustment to gross receipts with respect to effective costs of goods sold is not affected by this provision of the bill. [Id.]

Section 280E and its legislative history express a congressional intent to disallow deductions attributable to a trade or business of trafficking in controlled substances. They do not express an intent to deny the deduction of all of a taxpayer's business expenses simply because the taxpayer was involved in trafficking in a controlled substance. We hold that section 280E does not preclude petitioner from deducting expenses attributable to a trade or business other than that of illegal trafficking in controlled substances simply because petitioner also is involved in the trafficking in a controlled substance.

Petitioner argues that its supplying of medical marijuana to its members was not "trafficking" within the meaning of section 280E. We disagree. We define and apply the gerund "trafficking" by reference to the verb "traffic", which as relevant herein denotes "to engage in commercial activity: buy and sell regularly". Webster's Third New International Dictionary 2423 (2002). Petitioner's supplying of medical marijuana to its members is within that definition in that petitioner regularly bought and sold the marijuana, such sales occurring when petitioner distributed the medical marijuana to its members in

exchange for part of their membership fees.[5]  Accord <u>United</u>

<u>States v. Oakland Cannabis Buyers' Coop.</u>, <u>supra</u> at 489.

We now turn to analyze whether petitioner's furnishing of

its caregiving services is a trade or business that is separate

from its trade or business of providing medical marijuana.

Taxpayers may be involved in more than one trade or business,

see, e.g., <u>Hoye v. Commissioner</u>, T.C. Memo. 1990-57, and whether

an activity is a trade or business separate from another trade or

business is a question of fact that depends on (among other

things) the degree of economic interrelationship between the two

undertakings, see <u>Collins v. Commissioner</u>, 34 T.C. 592 (1960);

sec. 1.183-1(d)(1), Income Tax Regs.  The Commissioner generally

accepts a taxpayer's characterization of two or more undertakings

as separate activities unless the characterization is artificial

or unreasonable.  See sec. 1.183-1(d)(1), Income Tax Regs.

We do not believe it to have been artificial or unreasonable

for petitioner to have characterized as separate activities its

provision of caregiving services and its provision of medical

---

[5] In support of its position, petitioner relies upon <u>Raich</u>
<u>v. Ashcroft</u>, 352 F.3d 1222, 1228 (9th Cir. 2003), vacated and
remanded sub nom. <u>Gonzales v. Raich</u>, 545 U.S. 1 (2005), where the
Court of Appeals for the Ninth Circuit reasoned that the use of
medical marijuana is "different in kind from drug trafficking".
Petitioner's reliance on that reasoning is mistaken.  The U.S.
Supreme Court rejected the reasoning in <u>Gonzales v. Raich</u>, <u>supra</u>
at 26-28, 31-33, holding that the Controlled Substances Act
applied to individuals within the purview of California's medical
marijuana law.

marijuana. Petitioner was regularly and extensively involved in the provision of caregiving services, and those services are substantially different from petitioner's provision of medical marijuana. By conducting its recurring discussion groups, regularly distributing food and hygiene supplies, advertising and making available the services of personal counselors, coordinating social events and field trips, hosting educational classes, and providing other social services, petitioner's caregiving business stood on its own, separate and apart from petitioner's provision of medical marijuana. On the basis of all of the facts and circumstances of this case, we hold that petitioner's provision of caregiving services was a trade or business separate and apart from its provision of medical marijuana.

Respondent argues that the "evidence indicates that petitioner's principal purpose was to provide access to marijuana, that petitioner's principal activity was providing access to marijuana, and that the principal service that petitioner provided was access to marijuana * * * and that all of petitioner's activities were merely incidental to petitioner's activity of trafficking in marijuana." We disagree. Petitioner's executive director testified credibly and without contradiction that petitioner's primary purpose was to provide caregiving services for terminally ill patients. He stated:

"Right from the start we considered our primary function as being a community center for seriously ill patients in San Francisco. And only secondarily as a place where they could access their medicine." The evidence suggests that petitioner's operations were conducted with that primary function in mind, not with the principal purpose of providing marijuana to members.

As stated by the Board of Tax Appeals in Alverson v. Commissioner, 35 B.T.A. 482, 488 (1937): "The statute is not so restricted as to confine deductions to a single business or principal business of the taxpayer. A taxpayer may carry on more than one trade or business at the same time." Moreover, as the Supreme Court has observed in the context of illegal, nondeductible expenditures: "It has never been thought * * * that the mere fact that an expenditure bears a remote relation to an illegal act makes it non-deductible." Commissioner v. Heininger, 320 U.S. 467, 474 (1943).

Respondent relies heavily on his assertion that "Petitioner's only income was from marijuana-related matters, except for a couple of small donations". The record does not support that assertion, and we decline to find it as a fact. Indeed, the record leads us to make the contrary finding that petitioner's caregiving services generated income attributable to those services. In making this finding, we rely on the testimony of petitioner's executive director, whom we had an opportunity to

hear and view at trial. We found his testimony to be coherent and credible, as well as supported by the record. He testified that petitioner's members paid their membership fees as consideration for both caregiving services and medical marijuana, and respondent opted not to challenge the substance of that testimony. While a member may have acquired, in return for his or her payment of a membership fee, access to all of petitioner's goods and services without further charge and without explicit differentiation as to the portion of the fee that was paid for goods versus services, we do not believe that such a fact establishes that petitioner's operations were simply one trade or business. As the record reveals, and as we find as a fact, petitioner's management set the total amount of the membership fees as the amount that management consciously and reasonably judged equaled petitioner's costs of the caregiving services and the costs of the medical marijuana.

Given petitioner's separate trades or businesses, we are required to apportion its overall expenses accordingly. Respondent argues that "petitioner failed to justify any particular allocation and failed to present evidence as to how * * * [petitioner's expenses] should be allocated between marijuana trafficking and other activities." We disagree. Respondent concedes that many of petitioner's activities are legal and unrelated to petitioner's provision of medical

marijuana. The evidence at hand permits an allocation of expenses to those activities. Although the record may not lend itself to a perfect allocation with pinpoint accuracy, the record permits us with sufficient confidence to allocate petitioner's expenses between its two trades or businesses on the basis of the number of petitioner's employees and the portion of its facilities devoted to each business. Accordingly, in a manner that is most consistent with petitioner's breakdown of the disputed expenses, we allocate to petitioner's caregiving services 18/25 of the expenses for salaries, wages, payroll taxes, employee benefits, employee development training, meals and entertainment, and parking and tolls (18 of petitioner's 25 employees did not work directly in petitioner's provision of medical marijuana), all expenses incurred in renting facilities at the church (petitioner did not use the church to any extent to provide medical marijuana), all expenses incurred for "truck and auto" and "laundry and cleaning" (those expenses did not relate to any extent to petitioner's provision of medical marijuana), and 9/10 of the remaining expenses (90 percent of the square footage of petitioner's main facility was not used in petitioner's provision of medical marijuana).[6] We disagree with

---

[6] While we apportion most of the $212,958 in "Total deductions" to petitioner's caregiving services, we note that the costs of petitioner's medical marijuana business included the $203,661 in labor and $43,783 in other costs respondent conceded

(continued...)

respondent that petitioner must further justify the allocation of its expenses, reluctant to substitute our judgment for the judgment of petitioner's management as to its understanding of the expenses that petitioner incurred as to each of its trades or businesses.  Cf. <u>Boyd Gaming Corp. v. Commissioner</u>, 177 F.3d 1096 (9th Cir. 1999), revg. T.C. Memo. 1997-445.

All arguments by the parties have been considered.  We have rejected those arguments not discussed herein as without merit. Accordingly,

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[6](...continued)
to have been properly reported on petitioner's tax return as attributable to cost of goods sold in the medical marijuana business.