T.C. Memo. 2015-206

UNITED STATES TAX COURT

CANNA CARE, INC., A CALIFORNIA NOT-FOR-PROFIT CORPORATION,
Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5678-12.            Filed October 22, 2015.

William R. McPike, for petitioner.

Randall G. Durfee and Sarah E. Sexton Martinez, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge: Respondent determined deficiencies in petitioner's
Federal income tax of $229,473, $304,090, and $339,604 for 2006, 2007, and
2008, respectively. The issue for decision is whether respondent properly

[*2] disallowed deductions for petitioner's operating expenses pursuant to section 280E.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate herein by this reference the stipulation of facts filed on March 16, 2015, with attached exhibits.

When the petition was timely filed, petitioner's principal place of business was in Sacramento, California.[2]

In 1996 California voters approved the Compassionate Use Act of 1996 (CUA) to ensure that seriously ill Californians had the right to obtain and use marijuana for medical purposes. Cal. Health & Safety Code sec. 11362.5 (West

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]This case was tried before Judge Diane L. Kroupa on February 24 and 25, 2014. On June 16, 2014, Judge Kroupa retired from the Court. The Court issued an order informing the parties of her retirement and proposing to reassign this case to another judicial officer for purposes of preparing the opinion and entering the decision based on the record of trial, or, alternatively, allowing the parties to request a new trial. Pursuant to petitioner's motion requesting a new trial, this case was submitted to Judge Robert P. Ruwe on August 18, 2014. On February 3, 2015, the Court issued an order submitting the case to Judge Harry A. Haines for disposition. On March 16 and 17, 2015, this case was tried again before Judge Haines.

[*3] 2007). In 2003 the Medical Marijuana Program Act was approved to promote uniform and consistent application of the CUA, clarify the scope of its application, and enhance patients' and caregivers' access to medical marijuana through collective, cooperative cultivation projects. Id. secs. 11362.7-11362.9 (West 2007). The Federal Controlled Substances Act (CSA), however, classifies marijuana as a schedule I controlled substance, and marijuana is a controlled substance within the meaning of section 280E. Californians Helping to Alleviate Med. Problems, Inc. v. Commissioner (CHAMP), 128 T.C. 173, 181 (2007); 21 C.F.R. sec. 1308.11(d)(22) (West 2007 & 2008).

Bryan and Lanette Davies are the parents of six children. Faced with financial hardship compounded by his children's mounting tuition expenses, Mr. Davies turned to his faith for a solution. After much prayer, Mr. Davies was convinced that God wanted him to open a medical marijuana dispensary to solve his family's financial woes.

Petitioner was incorporated under the laws of the State of California on July 5, 2005, and is in the business of distributing marijuana for medical purposes as permitted by California law. Petitioner is a mutual benefit corporation, and, pursuant to California law, is prohibited from distributing marijuana for profit. See Cal. Health & Safety Code sec. 11362.765 (West 2007). At the time of its

[*4] incorporation and for all years at issue, Mr. and Mrs. Davies and an acquaintance, Jeff Cowen, were petitioner's officers and directors.

In order to purchase medical marijuana from petitioner, an individual was required to produce a written recommendation from a physician which was verified by petitioner's receptionist. Individuals were not charged a membership fee and paid only for medical marijuana or other products (e.g., books, T-shirts, and hats) that they purchased. Mr. Davies determined the price at which petitioner would sell marijuana, but the method he used to determine the price is unclear from the record.

During the years at issue petitioner occupied an approximately 2,250-square-foot space in a business park. The lobby area was open to the general public and had a table with medical marijuana pamphlets, legal information, and free bibles. After petitioner's receptionist verified their written physicians' recommendations, individuals were allowed to walk down a hallway into the locked sales area where marijuana was sold. The premises also had offices, storage rooms, restrooms, and a break room with a kitchen.

Mrs. Davies and Ryan Landers used two of the offices during the years at issue. Mr. Landers was a marijuana education activist. He and Mrs. Davies were involved in educating the public on the different uses of cannabis, organized

[*5] protests and rallies, and arranged for people to be present in court to show support in marijuana-related cases. During the years at issue Mrs. Davies testified at hearings before the California State Assembly and California State Senate on pending medical marijuana legislation. She also testified at multiple city council and board of county supervisor meetings, advocating opening access to medical marijuana. Americans for Safe Access, an organization that supports the medical use of marijuana, hosted meetings on petitioner's premises every other week during the years at issue. To accommodate larger meetings petitioner leased additional adjacent space in 2008 which became known as "Crusaders Hall". Petitioner funded Mrs. Davies' and Mr. Landers' marijuana activist activities.

Mr. Davies held a daily prayer at 6 p.m. on petitioner's premises. He, Mrs. Davies, and other employees, including ordained minister Terry Lee Allen, Sr., were willing to listen to, comfort, and pray with individuals who sought their counsel. During the years at issue no one associated with petitioner, including its employees, officers, and directors, was a trained healthcare or caregiving professional or had a substantial amount of experience in the healthcare industry.

At trial Mr. and Mrs. Davies emphasized petitioner's community involvement. Petitioner was involved with local cancer and diabetes walks, hosted community barbecues, and held a holiday toy drive. Petitioner's employees were

[*6] not required to participate in these activities. Some employees would occasionally volunteer to participate, and on other occasions employees would be paid to participate during work hours. Mr. Davies also testified that petitioner was a not-for-profit corporation, which to him meant that if there was money remaining after petitioner paid wages and taxes, made necessary purchases, and paid other expenses it would be given away. However, Mr. Davies said that petitioner was usually "in the red" and that the owners usually had to contribute additional money.

Petitioner had 10 employees in 2006 and 2007 and 6 employees in 2008. Mr. Davies determined salaries. During the years at issue the shareholders' salaries far exceeded the salaries paid to any other employees. Mr. Cowen was paid $88,700, $152,900, and $144,000 during 2006, 2007, and 2008, respectively. Mr. Davies was paid $79,200, $160,900, and $146,200 during 2006, 2007, and 2008, respectively. In addition to their salaries, petitioner made payments for its shareholders' automobiles in the amounts of $31,459, $24,609, and $23,942 during 2006, 2007, and 2008, respectively. Petitioner's manager, its highest paid nonshareholder employee, was paid $36,000, $55,600, and $52,000 in 2006, 2007, and 2008, respectively. Mrs. Davies was paid $27,000, $66,480, and $74,000 during 2006, 2007, and 2008, respectively. Petitioner's other employees made an

**[\*7]** average of $24,494.17, $12,173, and $12,314.29 during 2006, 2007, and 2008, respectively.

Petitioner filed timely tax returns for the years at issue, claiming deductions for various expenses which respondent disallowed pursuant to section 280E in a notice of deficiency mailed to petitioner on November 29, 2011.

OPINION

The sole issue in this case is whether respondent properly disallowed petitioner's deductions pursuant to section 280E. Petitioner bears the burden of proving that respondent's determination of the deficiencies set forth in the notice of deficiency is incorrect. See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).

Section 162 generally allows a taxpayer to deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Section 280E, however, is an exception to the general rule of section 162. It provides that

> [n]o deduction * * * shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

**[*8]** The application of section 280E rests on the presence of three key elements: (1) trade or business; (2) trafficking; and (3) a controlled substance. For ease of discussion, we will address these elements in reverse order.

I. Controlled Substance

Drug Enforcement Administration regulations list marijuana as a schedule I controlled substance for purposes of the CSA. 21 C.F.R. sec. 1308.11(d)(22). Petitioner stipulated that it was in the business of distributing marijuana and that marijuana was a controlled substance within the meaning of schedule I of the CSA, prohibited by Federal law, during the years at issue.

Petitioner advances numerous arguments as to why marijuana should no longer be considered a schedule I controlled substance. We reject these arguments. Marijuana was a schedule I controlled substance during the years at issue. As recently stated by the Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie: "[T]he only question Congress allows us to ask is whether marijuana is a controlled substance 'prohibited by Federal law.' * * * If Congress now thinks that the policy embodied in § 280E is unwise as applied to medical marijuana sold in conformance with state law, it can change the statute. We may not." Olive v. Commissioner, 792 F.3d 1146, 1150 (9th Cir. 2015), aff'g 139 T.C. 19 (2012).

[*9] II.  Trafficking

Petitioner argues that its actions cannot be considered "trafficking" for purposes of section 280E because its activities were not illegal under California law.  Petitioner claims that this conclusion is supported by memoranda issued by the Department of Justice (DOJ) on October 19, 2009, and August 29, 2013, and guidance issued by the Financial Crimes Enforcement Network (FinCEN) on February 14, 2014.

We have previously held the sale of medical marijuana pursuant to California law constitutes trafficking within the meaning of section 280E.  Olive v. Commissioner, 139 T.C. at 38 ("[A] California medical marijuana dispensary's dispensing of medical marijuana pursuant to the * * * [CUA] was 'trafficking' within the meaning of section 280E."); CHAMP, 128 T.C. at 182.  DOJ memoranda and FinCEN guidance released after the years at issue that represent exercises of prosecutorial discretion do not change the result in this case.  Petitioner regularly bought and sold marijuana.  This activity constitutes trafficking within the meaning of section 280E even when permitted by State law.  See CHAMP, 128 T.C. at 182.

**[*10]** III. Trade or Business

We find that petitioner engaged in the sale of marijuana. In CHAMP we held that the taxpayer's caregiving services and provision of medical marijuana were separate trades or businesses for purposes of section 280E and that the taxpayer could deduct the expenses attributable to its caregiving services. Id. at 173-174. Petitioner argues that the taxpayer in CHAMP was a single entity involved in two distinct activities which have been misconstrued as two separate businesses. Petitioner claims that the Tax Court erred in CHAMP in finding that the taxpayer's primary business was caregiving because an entity may not be a caregiver under California law. Petitioner asserts that the taxpayer in CHAMP was merely an entity doing charitable work.

Petitioner's interpretation of CHAMP is incorrect. In CHAMP the taxpayer operated a community center for members with debilitating diseases, including AIDS and cancer. Id. at 174. The taxpayer's "executive director had 13 years of experience in health services as a coordinator of a statewide program that trained outreach workers in AIDS prevention work." Id. The services the taxpayer provided included: five support groups that met weekly or biweekly; daily lunches for low-income members; hygiene supplies; one-on-one consultations with counselors to discuss benefits, health, housing, safety, and legal issues;

[*11] biweekly masseuse services; social events on Fridays and Saturdays; monthly field trips; online access; encouraging members to participate in political activities; and instructing members on various topics. Id. at 175-176. Members paid the taxpayer a membership fee for the right to receive extensive services and medical marijuana. Id. at 176. The membership fee was an amount the taxpayer's management estimated to be about equal to the cost of providing the foregoing services and the cost of the fixed amount of medical marijuana the taxpayer supplied to each of its members. Id.

CHAMP did not involve a determination as to whether the taxpayer qualified as a "caregiver" for purposes of California law, but instead determined that the taxpayer was involved in two distinct trades or businesses for purposes of the application of section 280E. We determined that the taxpayer was involved in two separate businesses--providing services and providing medical marijuana to its members. The fact that we labeled the services the taxpayer provided as "caregiving" is insignificant. We could have called them "social services" or simply "services" and our conclusion would have remained the same.

The crucial determination in CHAMP was that the taxpayer was engaged in two separate trades or businesses, and this is what allowed the taxpayer to deduct a portion of its expenses. In order "to be engaged in a trade or business for purposes

**[\*12]** of section 162, [a taxpayer] must be involved in the activity with continuity and regularity and the taxpayer's primary purpose for engaging in the activity must be for income or profit." Olive v. Commissioner, 139 T.C. at 41. The parties stipulated that petitioner was in the business of distributing medical marijuana. Aside from the sale of medical marijuana, petitioner's only other source of income was the sale of books, T-shirts, and other items. On the basis of the evidence presented, we cannot determine what percentage of petitioner's income was from the sale of medical marijuana and what percentage was from the sale of other items. Because of the parties' stipulation, we find that the sale of medical marijuana was petitioner's primary source of income and that the sale of any other item was an activity incident to its business of distributing medical marijuana. See id. We find that petitioner was engaged in one business--the business of selling medical marijuana.

California law prohibits the distribution of marijuana for profit, and it was emphasized at trial and on brief that petitioner was not operated for profit. See Cal. Health & Safety Code sec. 11362.765. Whether petitioner was operated in accordance with California law's restrictions on profiting from the distribution of marijuana is not an issue before us, and it does not affect our finding that petitioner was engaged in the business of distributing marijuana for purposes of

[*13] section 280E.  There is no doubt that Mr. Davies incorporated petitioner to produce income.  In fact, it was clear from Mr. Davies' testimony that he entered into the medical marijuana business in order to cure his family's financial difficulties.  Mr. Davies and the other shareholders received wages well in excess of those paid to petitioner's other employees, and the payment of such wages would not have been possible if petitioner had not had income.

On the basis of the foregoing, we find that petitioner was involved in the trade or business of trafficking in a controlled substance within the meaning of the CSA that was prohibited by law during the years at issue.  We hold that section 280E prohibits petitioner from deducting any amounts paid or incurred during the years at issue in connection with its trade or business that respondent disallowed.

We have considered all remaining arguments the parties made, including those in petitioner's briefing, and, to the extent not addressed, we find them to be irrelevant, moot or meritless.

To reflect the foregoing,

Decision will be entered for respondent.