T.C. Memo. 2015-149

UNITED STATES TAX COURT

JASON R. BECK, Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket No. 25842-10.                          Filed August 10, 2015.

Jason R. Beck, pro se.

<u>Carolyn A. Schenck</u> and <u>Vanessa M. Hoppe</u>, for respondent.

MEMORANDUM OPINION

GOEKE, <u>Judge</u>:  Respondent determined a $1,047,743 deficiency in Jason

R. Beck's Federal income tax for 2007 and a $209,549 accuracy-related penalty

under section 6662(a).[1]  The deficiency resulted from respondent's disallowance

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year at issue, and all Rule references are to the Tax
(continued...)

[*2] of expense deductions claimed on petitioner's Schedule C, Profit or Loss

From Business, for a "Health Care" business for the 2007 tax year.[2]  The expenses

reported on petitioner's Schedule C relate to the dispensing of medical marijuana.

Specifically, expense deductions claimed for Schedule C "other expenses",

"rent/lease other business property", "cost of goods sold", and "advertising" were

disallowed.  Therefore, the issues presented for our decision are:

(1) whether petitioner is entitled to deduct Schedule C expenses totaling

$194,094 for his medical marijuana dispensaries for the taxable year 2007.  We

hold that he is not;

(2) whether petitioner is entitled to Schedule C cost of goods sold (COGS)

of $600,000 for items seized during the Drug Enforcement Administration's

---

[1](...continued)
Court Rules of Practice and Procedure.

[2]Respondent filed three amendments to answer to apply sec. 280E to the
Schedule C expense deductions disallowed on the notice of deficiency, disallow
additional Schedule C expense deductions, and increase Schedule C gross receipts.
Significant adjustments that make up the deficiency (i.e., increased gross receipts
of $1,293,208 to reflect unreported gross receipts that respondent discovered after
he issued the notice of deficiency) are no longer at issue as these were decided in
respondent's favor with the granting of respondent's motion for partial summary
judgment on September 9, 2014.

[*3] (DEA) raid of petitioner's medical marijuana dispensary in West Hollywood, California, for the taxable year 2007. We hold that he is not;[3]

(3) whether petitioner is entitled to a section 165 loss deduction of $600,000 for items seized during the DEA's raid of petitioner's medical marijuana dispensary in West Hollywood, California, for taxable year 2007. We hold that he is not;

(4) whether petitioner is liable for self-employment tax of $68,949 for taxable year 2007.[4] We hold that he is; and

(5) whether petitioner is liable for the accuracy-related penalty pursuant to section 6662(a) for taxable year 2007. We hold that he is.

---

[3]Respondent concedes that petitioner is entitled to $750,394 in COGS for taxable year 2007, computed as follows: the disallowed amount reflected on the notice of deficiency of $1,350,394 minus $600,000 that petitioner claims was the value of the marijuana seized by the DEA. Respondent also concedes the issue of whether petitioner failed to report interest income of $10 for the taxable year 2007.

[4]In the third amendment to answer, respondent asserted an increase in petitioner's tax liability to properly account for self-employment tax in the correct amount of $89,046. After respondent's concessions and the granting of respondent's motion for partial summary judgment, the self-employment tax at issue is $68,949. This is a computational issue and is not discussed further herein.

**[*4]**                              Background

Certain facts in evidence have been stipulated and are so found.  The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.  When the petition was filed, petitioner resided in California.

I.      Formation of Alternative Herbal Health Services

Petitioner started a medical marijuana business in 2001 which by 2007 had expanded to two medical marijuana dispensaries.  Petitioner operated these dispensaries as a sole proprietor and conducted business under the name Alternative Herbal Health Services (AHHS).  Petitioner was not trained in any healthcare-related services and has never worked in the healthcare industry.

The first dispensary was on Haight Street in San Francisco, California (San Francisco dispensary).  On May 14, 2001, petitioner purchased 50% of the San Francisco dispensary.  Six months later, he purchased the remaining 50% ownership of the dispensary.  The San Francisco dispensary opened in 2001 and closed in the fall of 2008.  The second dispensary was on Santa Monica Boulevard in West Hollywood, California (West Hollywood dispensary).  The West Hollywood dispensary opened in 2004 and is currently in operation.

**[*5]** II.     Operation of AHHS

The dispensaries sold various strands of marijuana, marijuana seeds, pre-rolled marijuana joints, and edible food items prepared with marijuana (edibles). Petitioner did not grow marijuana at either dispensary to sell but rather purchased marijuana from growers.[5]  The San Francisco dispensary had around 40 strands of marijuana. The West Hollywood dispensary had around 70 strands of marijuana. Customers who purchased marijuana and edibles from petitioner's dispensaries were able to smoke and consume those products there.  Petitioner did not sell pipes, papers, or vaporizers.  However, these types of items were made available to customers who chose to medicate on site.  Petitioner and his employees also conducted the following activities with customers at no charge:  education on the effects of various strands of marijuana on the body; education on the use and benefits of vaporizers; discussions on the various strands of marijuana that were for sale; discussions on how to grow marijuana and the best grow shops to buy supplies from; counseling as to how to load a bong, pipe, joint, or other smoking device; and loading, grinding, and packing marijuana for customers' use of bongs, pipes, and vaporizers.

---

[5]Petitioner grew some small marijuana clones in 2007 at the West Hollywood dispensary, but these plants were never harvested.  These plants were seized during the DEA raid.

**[*6]** Recipients of the medical marijuana provided by the dispensaries could be either medical marijuana patients or designated care-givers of medical marijuana patients. In order to enter either dispensary, petitioner required that customers provide written recommendations for the use of marijuana from doctors or have medical ID cards. Petitioner did not charge customers for memberships to the dispensaries, nor did he charge admittance fees. Petitioner maintained a checking account in connection with the dispensaries. However, he did not accept checks or credit cards from customers and operated primarily on a cash basis.

Petitioner stored marijuana in plastic tubs at both of the dispensaries. "Tub sheets" or "tub slips" were taped to each tub for inventory tracking purposes. The tub sheet identified the product name and included details concerning when the tub was filled. Petitioner's dispensary employees were supposed to record the details each time marijuana was taken out of a tub and packaged. These tub records, when totaled, reflect only a portion of the marijuana that was available for purchase. Petitioner destroyed tub records for both of the dispensaries.[6]

Customers of the West Hollywood dispensary were given a "guest check" in connection with a sale of marijuana. Guest checks were not given to customers of

---

[6]It was petitioner's ordinary practice to shred all sales and inventory records at the end of the day or by the next day. However, petitioner was able to recover and produce some of these records.

[*7] the San Francisco dispensary. In taking customer orders, dispensary employees would write the amount, weight, price, and name of the desired strand of marijuana on the guest check. If an edible was ordered, the quantity, name, and price was written on the guest check. The total amount due was written at the bottom of the guest check. Dispensary employees took the guest check back from the customer upon receiving payment. Petitioner shredded most of the 2007 guest checks of the West Hollywood dispensary. Petitioner provided respondent with the only remaining documents, which included 28 days of guest checks primarily from December 2007. The West Hollywood dispensary also had a vending machine that dispensed marijuana and edibles. The vending machine accepted only cash payments, which were collected when the machine was restocked every couple of weeks. However, no documentation or receipts were separately maintained for the vending machine transactions.

Employees at both dispensaries used a cash register to log sales of marijuana and cash paid out. There was only one cash register at each dispensary. At the end of each day, a "z-tape" was generated by the cash register, which reflected the total sales and payouts of the day. Petitioner shredded most of the 2007 z-tape records from both dispensaries. Petitioner provided respondent with the only remaining documents, which included 41 days of z-tapes from the West

[*8] Hollywood dispensary reflecting the date, net sales, net tax, number of sales, amounts paid in, and amounts paid out. Petitioner was unable to recover any z-tapes from the San Francisco dispensary.

At the end of each day that the West Hollywood dispensary was open, petitioner or his employees packed a plastic baggie with the following documents: z-tape documents, receiving vouchers, sales receipts, and guest checks. Not all baggies contained all types of sales documents. Petitioner was able to recover some of these baggies and provide them to respondent.

III.    DEA Raid of the West Hollywood Dispensary

On January 11, 2007, the DEA was authorized to conduct a search of petitioner's West Hollywood dispensary. In the affidavit attached to the Federal search warrant application, the DEA special agent described the items to be seized as evidence, fruits, and instrumentalities of violations of several Federal drug statutes related to possession with the intent to distribute a controlled substance, marijuana. The Central District of California authorized the DEA to seize numerous items, including controlled substances such as marijuana and edibles. On January 17, 2007, DEA special agents entered petitioner's West Hollywood dispensary and conducted a search of the premises. The DEA seized items

[*9] including controlled substances, food items suspected to contain marijuana, and marijuana plants. The DEA also seized $1,470.71 and $11,082.

After the DEA raid, petitioner's West Hollywood dispensary was closed from January 17 through 23, 2007. After execution of the Federal search warrant, the DEA and the Los Angeles Police Department were authorized by the Los Angeles Superior Court to execute a State search warrant at Bank of America for accounts in the name of "Jason Robert Beck". Pursuant to the State search warrant, funds totaling $2,805 were seized. These funds were believed to be proceeds of marijuana trafficking.

IV.    Preparation of Petitioner's 2007 Tax Return

Petitioner timely filed his 2007 tax return, reporting income from Form W-2, Wage and Tax Statement, as well as attaching a Schedule C for a "Health Care" business. Petitioner reported the income and expenses related to AHHS on the Schedule C, reporting $1,700,000 in gross receipts with $1,429,614 in COGS and $194,094 in expenses. Petitioner states that the gross receipts and COGS entries on his 2007 tax return each include $600,000 attributable to the value of the marijuana seized by the DEA. All gross receipts and expenses reported on petitioner's 2007 tax return were from the sale or expenses of marijuana or edibles. All expenses reported on petitioner's Schedule C pertained to the

[*10] marijuana dispensaries, and those expenses were incurred at the San Francisco and West Hollywood dispensaries.

In preparing his 2007 tax return, petitioner gave the numbers to his attorney, Jim Hammer, who in turn gave them to his tax return preparer, James Moseley. Once the 2007 tax return was prepared, Mr. Moseley gave the return to petitioner for his review and approval. Upon petitioner's approval, Mr. Moseley efiled the 2007 tax return with respondent. Mr. Moseley did no bookkeeping for petitioner, the San Francisco dispensary, or the West Hollywood dispensary. Mr. Moseley did not review any source documents relating to the numbers reported on petitioner's 2007 tax return. Mr. Moseley did no payroll work for petitioner, the San Francisco dispensary, or the West Hollywood dispensary. Mr. Moseley did not issue any Forms W-2 or Forms 1099-MISC, Miscellaneous Income, on behalf of or in connection with petitioner, the San Francisco dispensary, or the West Hollywood dispensary.

## V. Petitioner's AHHS Records

Petitioner provided copies of the leases for both of his medical marijuana dispensaries to the Court. However, petitioner did not provide evidence of any lease payments. He also provided a copy of the DEA search warrant dated January 11, 2007. Petitioner provided documents relating to payroll but did not provide an

[*11] explanation as to where these expenses were reported on his tax return. Petitioner has not provided any evidence to support the COGS claimed on his Schedule C or the deductions claimed for outside services and advertising expenses.

VI.    California Compassionate Use Act (CCUA)

The State of California's voters approved the California Compassionate Use Act of 1996, codified at Cal. Health & Safety Code sec. 11362.5 (West 2007), as a ballot initiative in 1996. The CCUA is intended to ensure that "seriously ill Californians" (recipients) can obtain and use marijuana if physicians recommend marijuana as beneficial to recipients' health. Numerous medical marijuana dispensaries were formed in California to dispense medical marijuana to recipients. Medical marijuana, however, is a controlled substance under Federal law. Petitioner intended to dispense medical marijuana through the San Francisco dispensary and West Hollywood dispensary pursuant to the CCUA and related legislation and guidelines.

## Discussion

California law allows petitioner to dispense medical marijuana to customers through his AHHS dispensaries. However, Federal law prohibits taxpayers from deducting any expense of a trade or business that consists of the trafficking of a

**[*12]** controlled substance such as marijuana.  See sec. 280E.  Respondent

disallowed deductions claimed on petitioner's Schedule C related to the operation

of his AHHS dispensaries for the 2007 tax year.  Petitioner disputes the

disallowance and alleges:  "[T]he disallowance by the IRS of certain cost of goods

for the wholesale expense of cannabis is improper" and the "IRS is not entitled to

any tax revenue per its own code, for Medical Marijuana during 2007."  Petitioner

also states that the "IRS cannot accept tax revenue on this type of business due to

its claim that product i[s] illegal."  We are asked to decide whether petitioner may

deduct certain Schedule C business expenses related to the operation of his AHHS

dispensaries.  We are also asked to decide whether petitioner is entitled to

Schedule C COGS or a section 165 loss deduction for items seized during a DEA

raid of petitioner's dispensary and whether petitioner is liable for an

accuracy-related penalty.

I.     Burden of Proof

The taxpayer bears the burden of proving, by a preponderance of the

evidence, that the Commissioner's determinations are incorrect.  See Rule 142(a);

Welch v. Helvering, 290 U.S. 111, 115 (1933).  Moreover, deductions are a matter

of legislative grace, and the taxpayer bears the burden of proving entitlement to

any claimed deductions.  Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503

[*13] U.S. 79, 84 (1992). Section 7491(a) sometimes shifts the burden of proof to the Commissioner, but that section does not apply where a taxpayer fails to satisfy the recordkeeping and substantiation requirements. See sec. 7491(a)(2)(A) and (B). Petitioner has failed to satisfy those requirements. Respondent bears the burden of proof only with respect to the increased deficiency asserted in the amendments to answer.[7] See Rule 142(a)(1).

II.     Schedule C Expenses

In 2007 petitioner trafficked in the sale of marijuana at his AHHS dispensaries. Petitioner reported $194,094 in Schedule C expenses related to the AHHS dispensaries.

A.      Business Expense Deductions

Deductions are a matter of legislative grace, and taxpayers must maintain sufficient records to substantiate the amounts of their income and entitlement to any deductions or credits claimed. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. at 84; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). A taxpayer may deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Sec. 162.

_____

[7]We need not decide who bears the burden of proving the applicability of sec. 280E because resolution of that issue does not rest on which party bears the burden of proof.

**[\*14]** Whether an expense is ordinary is determined by time, place, and circumstance, and whether it is necessary is determined by whether it is appropriate and helpful. Welch v. Helvering, 290 U.S. at 113-114. The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 471 (1943). Where a taxpayer reports a business expense but cannot fully substantiate it, the Court generally may approximate the allowable amount. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However, we may do so only when the taxpayer provides evidence sufficient to establish a rational basis upon which an estimate can be made. Vanicek v. Commissioner, 85 T.C. 731, 743 (1985).

Here, petitioner intentionally and routinely destroyed most documents pertaining to the operation of both dispensaries. Petitioner was able to recover and produce some records; however, those records do not reconcile with the categories or amounts reported on petitioner's tax return. Petitioner is not entitled to deduct the Schedule C expenses because they are unsubstantiated.

B.    Section 280E

A taxpayer may not deduct any amount paid or incurred in carrying on a trade or business where the "trade or business (or the activities which comprise

[*15] such trade or business) consists of trafficking in controlled substances * * * which is prohibited by Federal law". Sec. 280E. We have previously determined that medical marijuana is a controlled substance under section 280E. See Californians Helping To Alleviate Med. Problems, Inc. v. Commissioner (CHAMP), 128 T.C. 173, 181 (2007); see also Gonzalez v. Raich, 545 U.S. 1 (2005). We have also held that a California medical marijuana dispensary's dispensing of medical marijuana pursuant to the CCUA was "trafficking" within the meaning of section 280E. CHAMP, 128 T.C. at 182-183. Here, petitioner was trafficking in a controlled substance. Petitioner admitted that all of his claimed Schedule C expense deductions were attributable to the operation of his AHHS dispensaries.

In CHAMP, 128 T.C. at 181-182, we held that section 280E precluded the taxpayer from deducting expenses attributable to a medical marijuana business. However, we allowed a portion of the taxpayer's operating expenses, finding that the taxpayer operated two separate businesses. Id. at 184-185. The taxpayer in CHAMP dispensed medical marijuana pursuant to the CCUA and also provided caregiving services. Id. at 174-175. Because two separate businesses were operated in CHAMP, we allowed the taxpayer to deduct the portion of the operating expenses unrelated to the medical marijuana business. Id. at 185-186.

[*16] The present case is distinguishable from CHAMP. Petitioner operated two medical marijuana dispensaries where he sold marijuana and edibles. Customers were also permitted to medicate onsite. Petitioner and his employees also instructed customers on the effects of marijuana and the proper use of smoking devices free of charge. Petitioner has provided no evidence that the AHHS dispensaries sold any non-marijuana-related items. The sole purpose of the AHHS dispensaries was to provide customers with medical marijuana and instruct those customers on how to use it. Unlike the taxpayer in CHAMP, petitioner has provided no evidence that he had any business activity unrelated to the sale or distribution of marijuana. Further, petitioner has not established which, if any, expenses were for any alleged services offered and which expenses related to the sale of marijuana.

Moreover, the Court of Appeals for the Ninth Circuit recently affirmed our decision in Olive v. Commissioner, 139 T.C. 19 (2012), aff'd, __ F.3d __, __, 2015 WL 4113811, at *4 (9th Cir. July 9, 2015), holding that we "properly concluded that I.R.C. § 280E precludes Petitioner from deducting, pursuant to I.R.C. § 162(a), the ordinary and necessary business expenses associated with his operation of * * * [his business]." Therefore, petitioner's Schedule C expenses are not deductible after application of section 280E.

[*17] III.    DEA-Seized Property

On January 17, 2007, the DEA seized marijuana, edibles, and money from petitioner's West Hollywood dispensary. These items were not returned to petitioner. Petitioner valued the seized marijuana at $600,000. Petitioner sought to include this amount as Schedule C COGS for taxable year 2007, in addition to the amount respondent already allowed. Additionally, petitioner seeks to deduct a section 165 loss for the marijuana seized by the DEA.

A.    COGS

COGS is an offset to gross receipts in determining business income. Sec. 1.61-3(a), Income Tax Regs. A taxpayer must keep sufficient records to substantiate any amount claimed as COGS. Wright v. Commissioner, T.C. Memo. 1993-27.

Petitioner seeks to characterize the cost of marijuana seized by the DEA as COGS. Petitioner values the seized marijuana at $600,000 but has provided no evidence as to how he computed this amount. Petitioner carried at least 70 different strands of marijuana in the West Hollywood dispensary. Petitioner failed to identify which strands were among the marijuana confiscated by the DEA. Petitioner did not provide any evidence regarding the amounts he paid for the strands of marijuana or how he determined his selling prices for the various

**[\*18]** strands of marijuana. In addition to marijuana, the DEA also seized edibles and marijuana plants. However, it is unclear whether petitioner is including costs of these items in the $600,000. Because of his complete failure to substantiate the value of the seized marijuana, petitioner is not entitled to claim $600,000 as part of his Schedule C COGS. Additionally, if petitioner had provided substantiation, the seized marijuana would still not be allowable as COGS because the marijuana was confiscated and not sold. See Holt v. Commissioner, 69 T.C. 75, 78 (1977), aff'd, 611 F.2d 1160 (5th Cir. 1980).

B.   Section 165

Although it is not entirely clear from the pleadings, petitioner appears to seek to deduct a section 165 loss for the marijuana seized by the DEA. In general, section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Sec. 165(a). However, section 280E provides that no deduction or credit (including a deduction pursuant to section 165) shall be allowed for any amount paid or incurred in connection with trafficking in a controlled substance. Holt v. Commissioner, 69 T.C. 75. Therefore, petitioner is not entitled to a section 165 loss deduction for the marijuana seized by the DEA.

**[*19]** IV.  Accuracy-Related Penalty

Respondent determined that petitioner is liable for an accuracy-related penalty under section 6662(a). Section 6662(a) and (b)(1) imposes a 20% penalty on an underpayment of tax required to be shown on a return if the underpayment is attributable to a taxpayer's negligence or disregard of rules or regulations.

Section 6662(c) defines negligence as including any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws. Negligence has also been defined as the failure to exercise due care or the failure to do what a reasonable and prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. Sec. 1.6662-3(b)(1), Income Tax Regs. Section 6662(c) determines that "disregard" includes any careless, reckless, or intentional disregard.

Section 6664(c)(1) provides an exception to the accuracy-related penalty if it is shown that the taxpayer had reasonable cause and acted in good faith. Sec. 1.6664-4(b)(1), Income Tax Regs. The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Higbee v. Commissioner, 116 T.C. 438, 448 (2001); see sec. 1.6664-4(b)(1), Income Tax Regs.

[*20] The Commissioner bears the burden of production with respect to a taxpayer's liability for accuracy-related penalties and the burden of proof for increased penalties asserted in the answer . See sec. 7491(c). To meet those burdens, the Commissioner must produce sufficient evidence indicating that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. at 446-447.

Petitioner intentionally destroyed most of the inventory and sales records related to his AHHS dispensaries. The records petitioner ultimately provided to respondent do not reconcile with the categories or amounts reported on petitioner's 2007 tax return. Petitioner has failed to keep and submit adequate records to support his reported Schedule C expenses. Furthermore, petitioner has failed to ascertain the proper treatment of his loss of any marijuana seized by the DEA or substantiate his claim that the DEA seized $600,000 worth of marijuana from the West Hollywood dispensary. Petitioner also underreported his income. Therefore, we find petitioner's underpayment negligent and petitioner lacking reasonable cause or good faith. Accordingly, we sustain respondent's imposition of an accuracy-related penalty under section 6662(a) for the 2007 tax year.

**[\*21]** In reaching our holdings herein, we have considered all arguments the parties made, and to the extent we did not mention them above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155.</u>