Filed 3/29/17 Unmodified opinion attached

**<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| GATEWAY COMMUNITY CHARTERS, | C078677 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2013-00149018-CU-PT-GDS) |
| v. | |
| HEIDI SPIESS, | ORDER MODIFYING OPINION, DENYING REHEARING AND GRANTING REQUEST FOR JUDICIAL NOTICE |
| Defendant and Respondent. | |
| | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on March 8, 2017, be modified as follows:

In the first full paragraph on page 7, delete the fourth sentence of the paragraph, which begins, "It is also subject to the open meeting laws . . ." and the parenthetical citation that follows the sentence, and replace the sentence and the parenthetical with the following sentence: "Pursuant to its charter, it is also subject to the open meeting laws of

1

the Ralph M. Brown Act (Gov. Code, § 54950 et seq.) and to the California Public Records Act (Gov. Code, § 6250 et seq.)."

This modification does not change the judgment.

Appellant's petition for rehearing is denied.

Appellant's request for judicial notice, filed March 27, 2017, is granted.

(CERTIFIED FOR PUBLICATION.)


<u>          /s/          </u>
RAYE, P. J.


<u>          /s/          </u>
BUTZ, J.


<u>          /s/          </u>
DUARTE, J.

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| GATEWAY COMMUNITY CHARTERS, | C078677 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2013-00149018-CU-PT-GDS) |
| v. | |
| HEIDI SPIESS, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Christopher E. Krueger, Judge.  Affirmed.

Young, Minney & Corr, Paul C. Minney, James E. Young, William J. Trinkle and Rachel B. Tillman for Plaintiff and Appellant.

Procopio, Cory, Hargreaves & Savitch, Wendy L. Tucker; California Charter Schools Association, Ricardo J. Soto, Julie Ashby Umansky and Phillipa L. Altmann for California Charter Schools Association as Amici Curiae on behalf of Plaintiff and Appellant.

Outten & Golden, Jennifer S. Schwartz and Menaka N. Fernando for Defendant and Respondent.

In this appeal, we are called upon to answer a novel question of statutory interpretation: whether Gateway Community Charters (Gateway), a nonprofit public benefit corporation that operates charter schools, is an "other municipal corporation" for purposes of Labor Code section 220, subdivision (b) (hereafter section 220(b)),[1] thereby exempting it from assessment of waiting time penalties described in section 203. We conclude it is not; therefore, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Gateway is a California nonprofit public benefit corporation that operates public charter schools, including the school at which Heidi Spiess worked as an at-will employee. Gateway was the statutory "exclusive public school employer" of all the employees at the charter school, including Spiess. Following her termination, Spiess filed a claim with the labor commissioner alleging Gateway failed to pay timely her wages due and owing as required by section 201. In its decision awarding Spiess $640 in wages, $128 in liquidated damages, $105.20 in interest, and $8,538 as a penalty pursuant to section 203, the labor commissioner expressly concluded Gateway did not qualify as an " 'other municipal corporation' " under section 220(b).[2]

---

[1] Undesignated statutory references are to the Labor Code.

[2] Though the position of the labor commissioner may be persuasive authority as to an issue within its purview where the labor commissioner takes a consistent stance as to that issue, where, as here, the labor commissioner has not taken a consistent position, as demonstrated by the cases presented by Gateway in exhibits 1 and 5 of its request for judicial notice, its interpretation is not entitled to " 'significant deference.' " (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105, fn. 7.) Therefore, we grant Gateway's request for judicial notice as to those two exhibits; we deny the request as to the other exhibits because they are not facially relevant to the instant case. Additionally, in light of its inconsistent position on this issue, we proceed with our analysis without deference to the labor commissioner's decision.

Gateway appealed that decision to the trial court pursuant to section 98.2, claiming it was exempt from section 203 penalties as an "other municipal corporation" pursuant to section 220(b). Following a trial de novo, the trial court too entered judgment finding that Gateway is not an "other municipal corporation" for purposes of section 220(b) and was not exempt from paying waiting time penalties pursuant to section 203. It ordered Gateway to pay Spiess $640 in wages, $128 in liquidated damages, $105.20 in interest, and $8,538 in waiting time penalties, plus costs, interest, and attorney fees.

## DISCUSSION

Gateway contends it qualifies as an "other municipal corporation" for purposes of section 220(b), thereby exempting it from the assessment of waiting time penalties as described in section 203. Section 220(b) provides that the waiting time penalty codified in section 203, subdivision (a) does not apply "to the payment of wages of employees directly employed by any county, incorporated city, or town or other municipal corporation." (§ 220(b).) Contrary to Gateway's contention, we conclude Gateway is not an "other municipal corporation" for purposes of the statutory exemption from waiting time penalties codified in section 220(b).

As we have frequently explained, " '[o]ur fundamental task in construing' . . . any legislative enactment[] 'is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' [Citation.] We begin as always with the statute's actual words, the 'most reliable indicator' of legislative intent, 'assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.' " (*Even Zohar*

3

*Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837-838.)

The term "other" is inherently ambiguous. (*Zumbrun Law Firm v. California Legislature* (2008) 165 Cal.App.4th 1603, 1619.) Thus, to assist us in the interpretation of the phrase in question here—"other municipal corporation"—we turn to the related maxims of construction of *noscitur a sociis* ("literally, 'it is known from its associates' ") and *ejusdem generis* ("literally, 'of the same kind' "). (*California Farm Bureau Federation v. California Wildlife Conservation Bd.* (2006) 143 Cal.App.4th 173, 189.) "*Noscitur a sociis* . . . means that a word may be defined by its accompanying words and phrases, since 'ordinarily the coupling of words denotes an intention that they should be understood in the same general sense.' [Citation.] *Ejusdem generis* . . . means that where general words follow specific words, or specific words follow general words in a statutory enumeration, the general words are construed to embrace only things similar in nature to those enumerated by the specific words." (*Ibid.*)

Here, the specifically listed words that precede "other municipal corporation" are "any county, incorporated city, or town." (§ 220(b).) As "other" is an "inherently relational" term, its use suggests that the previously referenced entities in the sequence share the same characteristic or characteristics as the entity mentioned immediately thereafter, that is those of a "municipal corporation." (See *People v. Hubbard* (2016) 63 Cal.4th 378, 387.) We must then ascertain what key characteristics are common to a "county, incorporated city, or town" that another entity must possess to enable it to be characterized as an "other municipal corporation."

Gateway relies on *Division of Labor Law Enforcement v. El Camino Hosp. Dist.* (1970) 8 Cal.App.3d Supp. 30 (*El Camino*) in support of its claim that it is an "other

4

municipal corporation."[3]  *El Camino* was primarily concerned with whether the term "other municipal corporation" should be read strictly—thereby limiting it to incorporated cities or towns—or more broadly—to include public or quasi-municipal corporations. (*El Camino*, *supra*, at p. Supp. 35.)  It concluded only the broad interpretation was reasonable and would give effect to all language included in the provision.  (*Ibid.*)  In reaching this conclusion, *El Camino* further noted that the " 'characteristic feature of the municipal corporation, as that term is used in its strict or proper sense, is the power and right of local self-government,' " and that " 'quasi-municipal corporations are public agencies created or authorized by the Legislature to aid the state in some form of public or state work, other than community government.' "  (*Id.* at p. Supp. 33.)  Finally, it held, without further analysis, that the public hospital district in question was a quasi-municipal corporation that qualified for purposes of section 220(b) as an "other municipal corporation," thereby exempting it from waiting time penalties.  (*El Camino*, at pp. Supp. 33, 36.)

Gateway also relies on *Kistler v. Redwoods Community College Dist.* (1993) 15 Cal.App.4th 1326.  Relying on *El Camino* without any additional analysis, *Kistler* concluded that the community college district at issue was "a 'municipal corporation' " for purposes of section 220(b).  (*Kistler*, at p. 1337; see Ed. Code, § 70900 et seq. [powers, governance, and regulation of community college districts].)

Based on *El Camino* and *Kistler*, one might deduce, as Gateway and amicus curiae California Charter Schools Association (CCSA) appear to do, that the only showing that must be made to qualify as a quasi-municipal corporation or "other municipal corporation" for purposes of section 220(b), is that (1) the entity was created or

---

[3]  We note that this case, though persuasive, is not binding precedent as it comes from the appellate division of a superior court.  (*Suastez v. Plastic Dress-Up Co.* (1982) 31 Cal.3d 774, 782, fn. 9.)

authorized by the Legislature, and (2) it performs some kind of public or state work. We disagree with that deduction, however. The entity at issue in *El Camino*, a public hospital district, bore other characteristics reminiscent of a municipal corporation that are not present here and that were not expressly discussed in *El Camino*. (See Health & Saf. Code, § 32000 et seq. [powers, governance, and regulation of local health care or hospital districts].) The same is true of the community college district at issue in *Kistler*. These characteristics were described in some detail in *Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729 (*Johnson*), which considered whether a water storage district qualified as an "other municipal corporation" for purposes of section 220(b).

*Johnson* began by noting that in other contexts irrigation and water districts had been deemed municipal corporations, and that a water storage district provided the same principal function and bore no essential difference from irrigation or water districts. (*Johnson, supra*, 174 Cal.App.4th at p. 741.) *Johnson* detailed the identifying characteristics of these entities, explaining that "water storage districts are governed by elected boards of directors that have regulatory and police powers to operate facilities for storage and distribution of water," including the power to "set[] tolls and charges for the use of water, issu[e] bonds, and acquir[e] property through eminent domain." (*Ibid.*) They are subject to open meeting laws and their records are subject to public disclosure. (*Ibid.*) "Thus, water storage districts perform an essential governmental function for a public purpose, i.e., the development, preservation and conservation of water for the beneficial use of the district's inhabitants [citation], through an elected board of directors with regulatory powers. As such, water storage districts qualify as other municipal corporations under section 220, subdivision (b)." (*Ibid.*)

*Johnson* thus makes clear that while the performance of "an essential governmental function for a public purpose" is crucial to determining whether an entity is an "other municipal corporation," it is not the only factor to be considered. (*Johnson,*

6

*supra*, 174 Cal.App.4th at p. 741.)  We must also consider, for example, whether the entity is governed by an elected board of directors; whether the entity has regulatory or police powers; whether it has the power to impose taxes, assessments, or tolls; whether it is subject to open meeting laws and public disclosure of records; and whether it may take property through eminent domain.

Gateway and amicus curiae CCSA rely on *El Camino* and on the language of *Johnson* highlighting the importance of whether the entity provides a public purpose to contend that it should be considered an "other municipal corporation."  We are not persuaded.  We acknowledge Gateway undoubtedly provides an essential governmental function, in that it provides public education through the charter schools it operates.  It is also subject to the open meeting laws of the Ralph M. Brown Act and the California Public Records Act.  (Gov. Code, §§ 54950-54952, 6250 et seq.; see *Yoffie v. Marin Hospital Dist.* (1987) 193 Cal.App.3d 743, 748-749.)  These factors are in its favor.

However, Gateway does not have the power to acquire property through eminent domain; it may not impose taxes and fees upon those who live within its geographical jurisdiction, indeed it has no geographical jurisdiction but exists pursuant to its charter; it has no independent regulatory or police powers but remains subject to the limitations of its charter throughout its existence; and its board of directors is not comprised of members elected by the public.  Without these multiple crucial characteristics that are common to municipal and quasi-municipal corporations, we cannot conclude Gateway, a nonprofit public benefit corporation, is an "other municipal corporation" for purposes of section 220(b).  In truth, without the publicly elected board, the geographical jurisdictional boundary, and the power to forcefully raise funds or acquire property from people within its geographical jurisdiction, Gateway bears little resemblance to a "county, incorporated city, or town" or to the quasi-municipal districts that have been deemed to qualify as "other municipal corporations" (for purposes of section 220(b)), i.e.,

7

public school districts, hospital districts, and water storage districts. Therefore, it does not appear the Legislature intended nonprofit public benefit corporations operating charter schools to be exempt from waiting time penalties as "other municipal corporations" pursuant to section 220(b).

Nor are we persuaded by Gateway and CCSA's reliance on specific statutory designations naming charter schools "part of the Public School System" (Ed. Code, § 47615), as "school districts" for funding purposes (Ed. Code, § 47612, subd. (c)), and as "exclusive public school employers" for collective bargaining purposes (Ed. Code, § 47611.5; Gov. Code, § 3540.1, subd. (k)) as evidence that the Legislature intended charter schools to be deemed "other municipal corporations," just as public school districts are (*El Camino*, *supra*, 8 Cal.App.3d at pp. Supp. 34, 36 [public school district is public corporation or quasi-municipal corporation]). Even setting aside that these express, specific, and limited statutory designations are in other codes and for other purposes not at issue here, this position is untenable given that for a variety of other purposes, charter schools are treated differently than public school districts. Charter schools are expressly permitted to opt out of various regulations controlling public school employment (Ed. Code, §§ 47605, 47611.5), including, for example, teacher tenure rules (Ed. Code, § 44929.21, subd. (b)), presuspension or dismissal notice and hearing requirements (Ed. Code, § 44934), a right to continued employment (see Ed. Code, § 44955), and employment of only credentialed teachers (Ed. Code, § 47605, subd. (*l*)). Thus, though charter schools in some ways and for some purposes are treated as public school districts, for other purposes they are not.

Additionally, the Education Code has been amended, as highlighted by Gateway and CCSA, to expressly treat charter schools like school districts for purposes of payment methods (i.e., over 10, 11, or 12 months, regardless of months worked). (Ed. Code, §§ 45038-45039.) However, that the statutes were amended to expressly identify charter

8

schools separately from school districts is a further indication that charter schools are *not* school districts for all purposes. (See *Tuolumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1038-1039 ["courts should give meaning to every word of a statute and should avoid constructions that would render any word or provision surplusage"].) Therefore, the statutory designations identified by Gateway and CCSA are clearly not intended to render charter schools public school districts for all purposes, nor is it likely charter schools actually desire to be treated as public school districts for all purposes. Moreover, these arguments fail to address the underlying question addressed above: that is, whether a charter school bears the same characteristics as a municipal corporation that would suffice to qualify it as an "other municipal corporation" for purposes of section 220(b).[4]

Finally, Spiess suggests the public policy demanding full and prompt payment of earned wages (see *Smith v. Superior Court* (2006) 39 Cal.4th 77, 82) weighs against finding Gateway to be an "other municipal corporation" exempt from assessment of waiting time penalties. Gateway argues the public policy underlying the waiting time

---

[4] For the same reason, we do not address the reasoning of *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164 (nonprofit public benefit corporations operating charter schools are "persons" for purposes of the California False Claims Act (Gov. Code, § 12650 et seq.) and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.)), *Knapp v. Palisades Charter High School* (2007) 146 Cal.App.4th 708 (nonprofit public benefit corporation is not a public entity for purposes of the Government Tort Claims Act), *Wright v. Compton Unified Sch. Dist.* (1975) 46 Cal.App.3d 177 (a public school district is a public entity for purposes of the Government Tort Claims Act (Gov. Code, § 900 et seq.)), and *Caviness v. Horizon Cmty. Learning Ctr., Inc.* (9th Cir. 2010) 590 F.3d 806 (charter school operator not a state actor for purposes of 42 U.S.C. § 1983 action), cited by the parties. Whether an entity is a "person" subject to the California False Claims Act or unfair competition law, or a "public entity" for purposes of the Government Tort Claims Act, or a "state actor" for purposes of a civil rights lawsuit, is inapposite to the question presented here—whether Gateway, a nonprofit public benefit corporation operating a charter school, is an "other municipal corporation" for purposes of section 220(b).

penalty is inapplicable to it as a nonprofit public benefit corporation because it, contrary to "private employers," is not motivated by financial gain and therefore needs no "disincentive . . . to pay final wages late." (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1400.) It further claims it should be exempt from the waiting time penalty because such a penalty would "reduce the funds available to educate" because it is funded (at least in part) by average daily attendance funds provided by the state. Such policy arguments are best left to the Legislature to decide. (*Cassel v. Superior Court* (2011) 51 Cal.4th 113, 124 ["Where competing policy concerns are present, it is for the Legislature to resolve them."].) Our role is merely to interpret the statute as written, not to establish policy. (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1112-1113.) If the Legislature desires to exempt charter schools from the waiting time penalties, it can do so. But it does not appear the Legislature so intended, for if it did it would have used clearer language than that found in section 220(b) to express such an intent.

In conclusion, as described above, Gateway does not bear the defining characteristics that qualify an entity as an "other municipal corporation" for purposes of section 220(b). Accordingly, we conclude that Gateway is not an "other municipal corporation" exempt from assessment of waiting time penalties, and we affirm the judgment of the trial court.

10

## DISPOSITION

The judgment is affirmed.  Spiess is awarded her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)  (***CERTIFIED FOR PUBLICATION***)


                                                          BUTZ             , J.


We concur:


           RAYE             , P. J.


          DUARTE           , J.

11