Filed 2/6/23 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TAMELIN STONE et al.,<br><br>　　　Plaintiffs and Appellants,<br>v.<br>ALAMEDA HEALTH SYSTEM,<br>　　　Defendant and Respondent. | A164021<br><br>(Alameda County Super Ct.<br>No. RG21092734)<br><br>**ORDER MODIFYING OPINION**<br>**[CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the published opinion filed on February 3, 2023, be modified as follows:

1. After the last sentence in the last full paragraph on page 16, under the "Disposition" section beginning with "On remand, the trial court shall enter a new order overruling the demurrer as to the first, second, third, fifth, sixth, and seventh causes of action in the first amended complaint," the following should be added:

Costs on appeal are awarded to appellants. (Cal. Rules of Court, rule 8.278(a)(3).)

This modification changes the judgment.

Date: ____02/06/2023_____　　　　　_____Jackson, P. J._____ P. J.

1

*__Tamelin Stone et al. v. Alameda Health System__*

(A164021)


Trial Court: Alameda County


Trial Judge: Hon. Noël Wise


Attorneys:

Law Offices of David Y. Imai and David Y. Imai for Plaintiffs and Appellants.


Renne Public Law Group, Ryan P. McGinley-Stempel, Geoffrey Spellberg, and Anastasia Bondarchuk for Defendant and Respondent.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TAMELIN STONE et al.,<br><br>       Plaintiffs and Appellants,<br><br>v.<br><br>ALAMEDA HEALTH SYSTEM,<br><br>       Defendant and Respondent. | A164021<br><br>(Alameda County Super Ct.<br>No. RG21092734) |

In this appeal from an order sustaining a demurrer without leave to amend, we are called upon to decide whether seven claims for violations of the Labor Code[1] lie against respondent Alameda Health System.  In answering that call, we address the following issues: (1) whether the "sovereign powers" doctrine renders respondent liable for certain Labor Code violations, notwithstanding the general rule of statutory construction exempting government agencies from such liability; (2) whether respondent is an exempt "municipal corporation" under section 220, subdivision (b); (3) whether respondent is an exempt "governmental entity" under section 226, subdivision (i); and (4) whether respondent can be sued under the Private Attorneys General Act (PAGA, § 2698 et seq.).

Observing that respondent conspicuously lacks many of the hallmarks of sovereignty, we hold that the sovereign powers doctrine applies.  For

---

[1] All subsequent references to statute are to the Labor Code, unless otherwise noted.

similar reasons, we are guided by precedent to conclude that respondent is not a "municipal corporation." (§ 220, subd. (b).) However, in the absence of such precedent, we do not exclude respondent from the category of "governmental entit[ies]." (§ 226, subd. (i).) Finally, we hold that there are at least some Labor Code violations for which a PAGA suit against respondent may proceed.

In their first amended complaint against respondent Alameda Health System, appellants Tamelin Stone and Amanda Kunwar alleged seven class action claims related to wages and hours, and six individual claims for race and sex discrimination.[2] When respondent demurred, the trial court sustained the demurrer as to all seven class action claims. With respect to the first six, the trial court reasoned that respondent was a "statutorily created public agency" beyond the reach of the Labor Code[3] sections and Industrial Welfare Commission (IWC) Wage Order invoked in the complaint. As to the seventh, a PAGA claim (PAGA, § 2698 et seq.), the trial court held that such an action would not lie because respondent is not a "person" within the meaning of section 18, there was no underlying statutory violation from which the PAGA claim could derive, and respondent's "public agency" status exempted it from paying punitive damages.

We disagree with that reasoning and therefore reverse the order as to the first, second, third, fifth, sixth, and seventh causes of action. For the reasons given below, we affirm the order sustaining the demurrer as to appellant's fourth claim.

---

[2] The individual claims are not at issue in this appeal.

2

# I. <u>BACKGROUND</u>

In response to "the challenges facing the Alameda County Medical Center arising from changes in the public and private health industries," the Legislature in 1997 enacted Health and Safety Code section 101850, authorizing the Alameda County Board of Supervisors "to create a hospital authority." (Health & Saf. Code, § 101850,[4] subd. (a)(1).) In turn, the Board of Supervisors created respondent hospital authority to govern the various hospital facilities formerly known as the Alameda County Medical Center.[5] In so doing, the board deemed respondent "a public agency for purposes of eligibility with respect to grants and other funding and loan guarantee programs pursuant to" the enabling statute.

Appellants Stone and Kunwar worked for respondent as a medical assistant and a licensed vocational nurse, respectively. Their first amended complaint alleged that respondent "automatically deducted ½ hour from each workday" as if to account for a meal period, when in fact, employees "were not allowed or discouraged from clocking out for meal periods." This alleged

---

[4] Below, we refer to this section as respondent's "enabling statute."

[5] We grant appellant and respondent's respective unopposed requests for judicial notice under Evidence Code sections 451, subdivision (a), and 452, subdivisions (c) and (h). (Rules of Court, rule 8.252, subd. (a).) Of particular note among appellant's exhibits are Chapter 2.120 of the Alameda County Code (establishing respondent), the Legislative Analyst's Office's "Overview of Health Care Districts" as established under section 32000 et seq., and a bill analysis prepared in anticipation of the Assembly vote for the enabling statute. This analysis notes that the creation of respondent might give Alameda County new "options . . . includ[ing] contracting out for selected services, reduced emphasis on the use of civil service county employees, and the ability to make quasi-independent business decisions." Respondent's exhibits are its filings with the Secretary of State, which conform to Government Code section 53051's requirements for "the governing body of each public agency."

conduct formed the basis of seven class action claims: (1) failure to provide off-duty meal periods (§§ 226.7, 512; IWC Wage Order 5 (Wage Order)); (2) failure to provide off-duty rest breaks (§ 226.7, Wage Order); (3) failure to keep accurate payroll records (§§ 1174, 1174.5, 1175; Cal. Code Regs., tit. 8, § 11050); (4) failure to provide accurate itemized wage statements (§§ 226, 226.3); (5) unlawful failure to pay wages (§§ 204, 222, 223, 225.5, 218.6, 218.5, 510, 1194, 1194.2, and 1198); (6) failure to timely pay wages (§§ 204, 210, 222, 223, 225.5, 218.6, 218.5); and (7) PAGA (§ 2698 et seq.).

Respondent demurred, arguing that the first six claims were "not authorized against public entities under any of the cited Labor Code sections." As to the seventh claim, respondent contended that it was not a "person" capable of being sued under PAGA, that the "PAGA claim [was] derivative of" the first six unauthorized claims, and that Government Code section 818 exempted respondent from liability. Crediting respondent's arguments, the trial court ultimately sustained the demurrer as to all seven class action Labor Code claims, leaving intact only a few of the complaint's individual race and sex discrimination claims.

This appeal followed.

## II. DISCUSSION

### A. Appealability

Under the "death knell" doctrine, "an order is appealable when 'it effectively terminates the entire action as to [a] class, in legal effect being "tantamount to a dismissal of the action as to all members of the class other than plaintiff." ' " (*Williams v. Impax Laboratories, Inc.* (2019) 41 Cal.App.5th 1060, 1066.) Here, although appellants' individual claims for race and sex discrimination survive, the trial court's order sustaining respondent's demurrer as to all seven class action claims under the Labor

4

Code terminated the action as to all members of the class, rendering the order directly appealable.

In support of its argument against applying the death knell doctrine, respondent cites *Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, *Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291, and *Haro v. City of Rosemead* (2009) 174 Cal.App.4th 1067, all of which are distinguishable. In those cases, specific causes of action that appeared in the complaint as class action claims survived to be litigated as individual claims. Here, no cause of action that was pleaded as a class action claim remains in any form. Thus, if appellants had "fail[ed] to appeal from" this order sustaining the demurrer to their Labor Code claims, they would have "los[t] forever the right to attack it." (*Stephen v. Enterprise Rent-A-Car* (1991) 235 Cal.App.3d 806, 811.)

In sum, the death knell doctrine applies.

## B. <u>Merits</u>

### 1. *Standard of Review*

"In determining whether plaintiffs properly stated a claim for relief, our standard of review is clear: ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such

5

reasonable possibility is squarely on the plaintiff.' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126, quoting *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

" 'We apply the usual rules of statutory interpretation to the Labor Code, beginning with and focusing on the text as the best indicator of legislative purpose. [Citation.] " [I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection." ' " (*McLean v. State of California* (2016) 1 Cal.5th 615, 622, quoting *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026–1027.)

### 2. *First, Second, and Third Causes of Action*

Appellants argue that the court erred by sustaining the demurrer as to the first, second, and third causes of action because respondent is not a sovereign governmental entity falling within an exception to "the general rule of statutory construction [whereby] governmental agencies are not liable unless [that is] expressly stated." We agree.

"[T]raditionally, 'absent express words to the contrary, governmental agencies are not included within the general words of a statute.' " (*Johnson v. Arvin-Edison Water Storage Dist.* (2009) 174 Cal.App.4th 729, 736 (*Johnson*), quoting *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1192 (*Wells*).) "However, under the 'sovereign powers' maxim, government agencies are excluded only if their inclusion would result in an infringement upon sovereign governmental powers." (*Johnson*, at p. 738.) " ' " 'Where . . . no impairment of sovereign powers would result, the reason underlying this rule of construction ceases to exist and the Legislature may

6

properly be held to have intended that the statute apply to governmental bodies even though it used general statutory language. . . .' " ' " (*Ibid.*, quoting *Regents of University of California v. Superior Court* (1976) 17 Cal.3d 533, 536.) "Nevertheless, '[w]hile the "sovereign powers" principle can help resolve an unclear legislative intent, it cannot override positive indicia of a contrary legislative intent.' " (*Ibid.*, quoting *Wells*, *supra*, 39 Cal.4th at p. 1192.)

Following *Johnson*, we conduct a three-part inquiry. First, we look for "express words" that include governmental agencies "within the general words of" the relevant statutes. (*Wells*, *supra*, 39 Cal.4th at p. 1193.) If not, we look for "positive indicia" of a legislative intent to *exempt* such agencies from those statutes. (*Ibid.*) Then, if no such indicia appear, we ask whether applying the statutes to respondent "would result in an infringement upon sovereign governmental powers." (*Id.* at p. 1192.) Accordingly, because the statutes underlying the first, second, and third causes of action[6] do not expressly include governmental agencies, we proceed to the second part of the *Johnson* inquiry: asking whether there are "positive indicia" of legislative intent to exempt respondent.

**a. Positive Indicia of Contrary Legislative Intent**

Respondent discerns such indicia in subdivisions (a)(2)(C) and (m) of the enabling statute: The former defines "[h]ospital authority" as a "public agency," and the latter provides that "a transfer of control or ownership of the medical center shall confer onto the hospital authority all the rights and

---

[6] Those statutes are sections 226.7 (mandated meal, rest, or recovery periods), 512 (meal periods), 1174 (record-keeping duties of employers), 1174.5 (failure to maintain records), and 1175 (misdemeanor status of certain section 1174 violations). The Wage Order is codified in the California Code of Regulations, title 8, section 11050, and similarly lacks any explicit, categorical application to government agencies.

7

duties set forth in state law with respect to hospitals owned or operated by a county."

However, subdivision (j) of the enabling statute designates respondent as "a government entity separate and apart from the county, . . . not [to] be considered to be an agency, division, or department of the county." (Health & Saf. Code, § 101850, subd. (j).) This stands in stark contrast to agencies found in previous cases to be outside the ambit of the sovereign powers doctrine. For example, the respondent water storage district in *Johnson*, *supra*, 174 Cal.App.4th at page 733, was " 'a public agency *of the state of California*.' " (Italics added.) The same is true for the California Department of Corrections and Rehabilitation—another *state* agency. (*California Correctional Peace Officers' Assn. v. State of California* (2010) 188 Cal.App.4th 646.) Here, far from identifying respondent with the state (or one of its political subdivisions), respondent's enabling statute actively *discourages* such an identification. For that reason, we find in the portions of the enabling statute cited by respondent no "positive indicia of a contrary legislative intent." (*Wells*, *supra*, 39 Cal.4th at p. 1193.)

As for the Wage Order, it provides an exemption for "employees directly employed by the State or any political subdivision thereof, including any city, county, or special district." (Cal. Code of Regs., tit. 8, § 11050, subd. (1)(C).) But respondent's employees are not employed *directly* by the state or the county; they are employed by "a hospital authority" created by the county under authorization from the state. (Health & Saf. Code, § 101850, subd. (a)(1).) Nor is respondent a special district like the "health care district[s]" authorized by Health and Safety Code sections 32000 et seq. Indeed, respondent's enabling statute distinguishes respondent from these districts by observing "that there is no general law under which [respondent]

8

authority could be formed." (Health & Saf. Code, § 101850, subd. (a)(1).) In short, the Wage Order's express exemptions, mentioned above, are not indicia of the Legislature's intent to exempt respondent from liability under the Wage Order.

Thus, because there are no "positive indicia of a contrary legislative intent" in either the statutes or the Wage Order, we turn to the task of applying the sovereign powers doctrine to respondent. (*Wells*, *supra*, 39 Cal.4th at p. 1193.)

### b. Infringement Upon Sovereign Governmental Powers

Finally, there is the matter of whether any "infringement of sovereign governmental powers" would result from subjecting respondent to the Wage Order or sections 226.7, 512, 1174, 1174.5, or 1175. (*Wells*, *supra*, 39 Cal.4th at p. 1192.) Citing its enabling statute, respondent argues that doing so would infringe upon the county's ability to "fulfill its commitment to the medically indigent, special needs, and general populations of Alameda County," "in a manner consistent with the county's obligations under Section 17000 of the Welfare and Institutions Code." (Health & Saf. Code, § 101850, subd. (a)(1).) The latter law requires counties to "relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions." (Welf. & Inst. Code, § 17000.)

As our colleagues in the Third District recently observed, however, "[p]overty alleviation" under Welfare and Institutions Code section 17000 "is *not* a core government function that cannot be delegated to the private sector." (*The Community Action Agency of Butte County. v. Superior Court* (2022) 79 Cal.App.5th 221, 239.) Although Welfare and Institutions Code

9

section 17000 refers to "state hospitals" as well, it presupposes that much poverty will be alleviated by a variety of *non-governmental* actors—relatives, friends, and private institutions—before any remaining poverty is to be addressed by the county. Respondent has failed to draw any principled distinction between powers wielded by itself, on one hand, and those that might be wielded by a private institution to whom the county has delegated its function of poverty alleviation, on the other. It has therefore failed to implicate any sovereign governmental powers.

In sum, subjecting respondent to liability for the first, second, and third causes of action would not infringe upon any sovereign governmental powers. Thus, the trial court erred by finding that respondent was not included within the statutes underlying those causes of action and in sustaining the demurrer as to those claims. [7]

### 3. *The Fifth and Sixth Causes of Action*

Appellants argue that the trial court erred in sustaining the demurrer as to their fifth and sixth causes of action because respondent is not an

---

[7] Our conclusion in this respect is not disturbed by the Fourth District's recent decision in *Allen v. San Diego Convention Center Corp., Inc.* (2022) 86 Cal.App.5th 589 (*Allen*), holding that the respondent convention center's "public entity" status rendered several Labor Code provisions inapplicable. In *Allen*, the respondent was "defined by the City of San Diego's municipal code as part of the city" and was "an agent of the City of San Diego." (*Id.* at p. 600.) Here, as we have already noted, respondent's enabling statute provides that respondent "shall be a government entity separate and apart from the county, and shall not be considered to be an agency . . . of the county." (Health & Saf. Code, § 101850, subd. (j).) Similarly, under Chapter 2.120.030 of the Alameda County Code, respondent is "not to be an agent of the county except where specifically provided."

10

exempt "municipal corporation" for the purposes of section 204 (requiring that employers timely pay wages semimonthly). We agree.

Section 220, subdivision (b), provides that section 204 does "not apply to the payment of wages of employees directly employed by any county, incorporated city, or town or other municipal corporation." Because it is beyond dispute that respondent is not a county, incorporated city, or town, we turn to the question of whether it is a "municipal corporation" in the relevant sense.

In *Gateway Community Charters v. Spiess* (2017) 9 Cal.App.5th 499, 506, the Third District set forth "multiple crucial characteristics that are common to municipal and quasi-municipal corporations." These include "the power to acquire property through eminent domain," possession of a geographical jurisdiction and the power to "impose taxes and fees upon those who live within" it, "independent regulatory or police powers," and a "board of directors . . . elected by the public." (*Ibid.*) The respondent water storage district in *Johnson, supra*, 174 Cal.App.4th at page 741, qualified as a municipal corporation in part because its "powers include[d] setting tolls and charges for the use of water, issuing bonds, and acquiring property through eminent domain." Respondent has none of the characteristics discussed in *Gateway* and lacks any powers analogous to the ones discussed in *Johnson*. In short, there is no reason to ascribe to respondent the status of a "municipal corporation" within the meaning of section 220, subdivision (b).

In sum, the trial court erred in sustaining the demurrer as to the fifth and sixth causes of action.[8]

---

[8] Because we reverse the order as to the fifth cause of action on these grounds, we do not reach appellant's contention that this claim alleged a minimum wage violation, which "expressly appl[ies] to public entities."

11

## 4. *Fourth Cause of Action*

Appellants argue that the trial court erred in sustaining the demurrer as to the fourth cause of action because respondent is not an "other governmental entity" within the meaning of section 226.  We disagree.

Section 226, subdivision (a), requires employers to provide employees with "an accurate itemized statement in writing showing" the employee's wages and hours worked, along with other information.  Subdivision (i) exempts from this requirement "the state, . . . any city, county, city and county, district, and "any other governmental entity."  (§ 226.)

" 'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose.  [Citation.]  We must look to the statute's words and give them "their usual and ordinary meaning."  [Citation.]  "The statute's plain meaning controls the court's interpretation unless its words are ambiguous." [Citations.]' "  (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527.)

The plain meaning of "other governmental entity" is expansive:  An entity is anything "that has a real existence," while "governmental" means "[o]f or relating to (a) government."  (Oxford English Dict. (2d ed. 1989).) Here, there is little doubt as to respondent's existence.  As for its relationship to the government, respondent was established by the government of Alameda County, an act which required special authorization from the state Legislature.  (Health & Saf. Code, § 101850.)  It also bears "all the rights and duties set forth in state law with respect to hospitals owned or operated by a county." (*Id.*, subd. (m).)  Consequently, while we have held that respondent is not a sovereign governmental agency or a "municipal corporation" under section 220, there is no reason to doubt that it is a "governmental entity" of some kind.

Appellants urge us to read the term "other governmental entity" to "include only sovereign governing entities," but cites no authority that would justify this departure from applying the broader plain meaning. As appellants acknowledge, *Gateway*, *supra*, 9 Cal.App.5th at page 502, was concerned with the meaning of "other municipal corporation" under section 220, not "other governmental entity" under section 204. Because the plain meaning of "other governmental agency" is more capacious than that of "other municipal corporation," we decline appellants' invitation to conflate the two.

In sum, the demurrer was properly sustained as to the fourth cause of action.

### 5. *Seventh Cause of Action (PAGA)*

Respondent's demurrer as to the PAGA claim was sustained by the trial court on three grounds: (1) "PAGA applies to claims against a 'person'," a category from which section 18 excludes respondent; (2) "a PAGA claim is derivative of the underlying statutory violation," but respondent's "public agency" status exempts it from the relevant statutes; and (3) "as a public agency," respondent is "not liable for damages imposed by way of punishing the defendant, such as PAGA civil penalties. (See Government Code, § 818.)" As we have already shown, the trial court's order is mistaken as to the second ground because respondent's public agency status does not shield it from liability for at least five of the statutory violations alleged in the first amended complaint. Therefore, only the trial court's first and third grounds remain to be addressed below.

### a. Section 18

"In 2003, citing inadequate funding for enforcement of labor laws, the Legislature enacted PAGA to 'authorize[ ] an employee to bring an action for

13

civil penalties on behalf of the state against his or her employer for Labor Code violations committed against the employee and fellow employees, with most of the proceeds of that litigation going to the state.' (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360 [abrogated on another ground by *Viking River Cruises, Inc. v. Moriana* (2022) 142 S. Ct. 1906, 1924].) The statute was intended ' "to punish and deter employer practices that violate the rights of numerous employees under the Labor Code." ' . . . ([*Iskanian,* at p. 360, 173 Cal.Rptr.3d 289, 327 P.3d 129].)" (*Wesson v. Staples the Office Superstore, LLC* (2021) 68 Cal.App.5th 746, 759–760.)

To that end, "[f]or all provisions of [the Labor Code] *except those for which a civil penalty is specifically provided,*" section 2699, subdivision (f), establishes "a civil penalty for a violation of these provisions, as follows: [¶] (1) If, at the time of the alleged violation, the person does not employ one or more employees, the civil penalty is five hundred dollars ($500). [¶] (2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation. [¶] (3) If the alleged violation is a failure to act by the Labor and Workplace Development Agency, or any of its departments, divisions, commissions, boards, agencies, or employees, there shall be no civil penalty." (§ 2699, subd. (f), italics added.) "For purposes of this part, 'person' has the same meaning as defined in Section 18." (*Id.*, subd. (b).)

Under section 18, a "person" is "any person, association, organization, partnership, business trust, limited liability company, or corporation." Where a defendant is a "public entity," it "does not fit this definition of

14

person." (*Sargent v. Board of Trustees of California State Univ.* (2021) 61 Cal.App.5th 658, 672.) Here, as discussed above, respondent is a public entity of some sort and therefore is not a "person" for purposes of PAGA. However, PAGA's "person" requirement is limited to statutory violations subject to the default penalties set forth above in section 2699, subdivision (f); it does *not* apply to those statutory violations "for which a civil penalty is specifically provided."

Here, a civil penalty is specifically provided for by at least two of the statutes underlying appellants' class action claims. Section 210, subdivision (a)(1), for example prescribes "[f]or any initial violation," a civil penalty of "one hundred dollars ($100) for each failure to pay each employee." Section 225.5, subdivision (a), is nearly identical in this respect, establishing "[f]or any initial violation" a $100 civil penalty "for each failure to pay each employee." Notwithstanding section 18, then, a PAGA claim would lie for at least two of the statutory violations alleged in the first amended complaint.[9] For that reason, section 18 provides no ground for sustaining the demurrer as to the seventh cause of action.

---

[9] Appellant asserts in passing that a third such statute is section 1194.2. That law allows for the recovery of liquidated damages "[i]n any action under Section 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute." (§ 1194.2, subd. (a).) And indeed, those liquidated damages "are in effect a penalty equal to the amount of unpaid minimum wages." (*Martinez v. Combs* (2010) 49 Cal.4th 35, 48, fn. 8.) But appellant has not attempted to show that this penalty is a "*civil* penalty" within the meaning of section 2699, subdivision (f). (Italics added.) In any event, the fact that PAGA claims would lie for violations of sections 210 and 225.5 is dispositive, so we do not reach the question of whether "liquidated damages" under section 1194.2 are a "civil penalty" under section 2699, subdivision (f).

### b. Government Code Section 818

Finally, there is the trial court's citation of Government Code section 818, which provides that "a public entity is not liable for . . . damages imposed primarily for the sake of example and by way of punishing the defendant." As appellant rightly notes, however, PAGA penalties are not punitive damages. Like the Civil Code section 52 penalties found not to be punitive damages in *Los Angeles County Metro. Transportation Auth. v. Superior Court* (2004) 123 Cal.App.4th 261, 271, PAGA penalties provide an "economic incentive" and "the means to retain counsel to pursue perpetrators under the statute." More generally, the "primary purpose" of civil penalties "is to secure obedience to statutes and regulations imposed to assure important public policy objectives." (*Kizer v. County of San Mateo* (1991) 53 Cal.3d 139, 147–148.) A meritorious PAGA claim serves precisely the same purpose because the "PAGA plaintiff acts 'as the proxy or agent of the state's labor law enforcement agencies.' " (*Wesson v. Staples the Office Superstore, LLC*, *supra*, 68 Cal.App.5th at page 760, quoting *Arias v. Superior Court* (2009) 46 Cal.4th 969, 986.)

Consequently, because PAGA penalties are not punitive damages, section 818 presents no obstacle to appellants' seventh class action claim.

### III. DISPOSITION

We affirm the order as to the fourth cause of action and reverse it as to the first, second, third, fifth, sixth, and seventh. On remand, the trial court shall enter a new order overruling the demurrer as to the first, second, third, fifth, sixth, and seventh causes of action in the first amended complaint.

16

_____

Wiseman, J.*

We concur:

_____

Jackson, P.J.

_____

Burns, J.

*Stone v. Alameda Health System* (A164021)

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

***Tamelin Stone et al. v. Alameda Health System***

(A164021)

Trial Court: Alameda County

Trial Judge: Hon. Noel Wise

Attorneys:

Law Offices of David Y. Imai and David Y. Imai for Plaintiffs and Appellants.

Renne Public Law Group, Ryan P. McGinley-Stempel, Geoffrey Spellberg and Anastasia Bondarchuk for Defendant and Respondent.